# EXHIBIT E

# EXHIBIT 9



## SUPPLY AGREEMENT

THIS AGREEMENT made this __13th__ day of September, 1996 , by and between Ziebart International Corporation, a Michigan corporation, having its principal place of business at 1290 E. Maple Road, Troy, Michigan 48007-1290 ("Ziebart") and Z Technologies Corporation, a Delaware corporation, having its principal place of business at 26500 Capitol Avenue, Redford, Michigan 48239-2597 ("Z-Tech");

### R E C I T A L

WHEREAS, Ziebart and Z-Tech have entered into an "Asset Purchase Agreement dated as of August __22__, 1996 ("Asset Purchase Agreement") wherein Z-Tech has purchased certain assets of Ziebart Products Group, Inc.("ZPG"), a wholly owned subsidiary of Ziebart; and

WHEREAS, Ziebart has, as a condition of said sale, agreed to purchase from Z-Tech automotive sealants, cleaners and coatings used in the Ziebart franchise operation, subject to the terms and conditions contained herein.

NOW THEREFORE, IT IS HEREBY AGREED by and between the parties hereto as follows:

1.   Ziebart shall, during the term of this Agreement, purchase from Z-Tech a minimum of 650,000 gallons annually, of automotive sealants, cleaners and coatings ("Products") manufactured by Z-Tech, which products shall include, but not be limited to the following:

|     |                                 |
| --- | ------------------------------- |
| a.  | Ziebart Formula Q               |
| b.  | Ziebart Super Xtra (Black)      |
| c.  | Ziebart Super Xtra (Clear)      |
| d.  | Ziebart Formula A               |
| e.  | Ziebart Formula A-150           |
| f.  | Ziebart Rust Eliminator         |
| g.  | Ziebart Spray-on Liner (Black)  |
| h.  | Ziebart Spray-on Liner (Gray)   |
| i.  | Ziebart Flame Retardant         |

Ziebart shall have the right to add additional formulas for Product and replace existing formulas during the term of this Agreement so long as the production of such additional or substituted formulas does not require Z-Tech to incur additional capital equipment costs.

2.   Term.   This Agreement shall commence the __13th__ day of August 1996, and unless terminated sooner in accordance with the

EO September
BW September

1

terms and conditions contained herein, shall expire on the _____ day of August 2001.

3.     Ziebart shall have an option to renew this Agreement for an additional five-year term on the same terms and conditions as contained in this Agreement upon written notice to Z-Tech no later than one hundred eighty (180) days prior to the expiration of the initial term of this Agreement.

4.     <u>Price and Payment Terms</u>.  Ziebart shall pay a price per gallon equal to Z-Tech's cost of production per gallon of each Product ordered by Ziebart, plus 15% during the term of this Agreement and any renewal periods.

For the purpose of this Agreement, Z-Tech's cost of production is defined as the total of direct labor, direct materials, and overhead and shall be determined as follows:

  a. <u>Direct Labor Costs</u>:

   The direct labor costs effective for the first year of this Agreement shall be Ziebart's direct labor rates in effect as of November 1, 1995. Thereafter, the direct labor cost shall be adjusted annually by the percentage equal to the percentage increase of the index mutually agreed upon between the parties on or before the Closing Date as defined in the Asset Purchase Agreement.

  b. <u>Direct Materials Costs</u>:

   Direct materials cost shall include all direct cost of raw materials purchased in the ordinary course of business using the First In, First Out ("FIFO") method of inventory evaluation. For the purpose of this provision, purchases in the ordinary course of business shall mean Z-Tech using its best efforts in securing necessary raw material pricing on not less than a one hundred eighty (180) day basis.

  c. <u>Overhead Rate Costs</u>:

   Overhead rate shall be $1.35 per gallon for the first year of this Agreement. The overhead rate shall not decrease to less than $1.35 per gallon, notwithstanding any decrease in [Z Technologies Corporation or Z-Tech's] actual overhead costs and shall not increase at a rate greater than two (2%) percent per year thereafter, or a mutually agreed upon increase. If the parties cannot agree upon the percentage increase within thirty (30) days of request for increase, then the parties shall submit

the issue to a mutually agreeable independent C.P.A., who shall determine any adjustment in the price per gallon by applying calculations consistent with Ziebart's historical method of calculating overhead rates.

The sum of the above cost factors shall determine the TOTAL BASE COST of each Product. Without change to the Total Base Cost calculation, increases or decreases in Direct Material Cost shall be passed on by Z-Tech to Ziebart on a dollar-for-dollar basis no more frequently than quarterly. Z-Tech shall provide thirty (30) days notice to Ziebart of any intended price increases.

Notwithstanding any term or condition of this Agreement to the contrary, the cost per gallon of any Product to Ziebart shall not exceed the current U.S. market price of a similar and competitive Product from the average of at least three (3) other U.S. manufacturers with annual sales of $5 million or more. Similar and Competitive Products are defined to be those which are tested to exhibit the same fluid constants per ASTM test methods (such as solids and viscosity), and performance properties such as accelered corrosion resistance as measured by ASTM test methods.

5. _Ziebart's Right to Audit_. Upon reasonable notice during normal business hours, Ziebart shall have the right to audit Z-Tech's Total Base Cost and Z-Tech agrees to cooperate in any such audit and provide to Ziebart all necessary information to perform such an audit. Should any such audit disclose a dispute in the amounts due hereunder, Ziebart shall provide Z-Tech with the results of the audit. If the dispute is not resolved between the parties within thirty (30) days of said written notice, then the dispute shall be submitted to a mutually agreed upon CPA for determination and such determination shall be binding on each of the parties.

6. _Payment Terms_. Ziebart shall pay, in full, suppliers' invoices within forty-five (45) days of receipt of the same from Z-Tech. All unpaid invoice amounts over fifty (50) days shall be subject to a five (5%) percent handling charge and shall accrue interest at the rate of eighteen (18%) percent per annum. Invoices shall be provided to Ziebart as of the date of shipping.

7. _Schedule of Ordering and Production of Products_. Ziebart shall provide Z-Tech at the beginning of this Agreement, with a report setting forth Ziebart's estimated annual Product requirements by month. Ziebart will update this report monthly for the following twelve (12) month period, and Z-Tech agrees that, on the first day of each month, Z-Tech shall have in inventory a minimum quantity of Product equal to Ziebart's estimate of its requirement for such Product for such month as updated on or prior to the first day of the preceding month. Commencing in the second annual period of this Agreement, Ziebart shall place each month

3

thereafter a minimum purchase order equal to the number of gallons of Product purchased by Ziebart in the lowest order month of the prior year.  Z-Tech shall produce all Products within written specifications provided by Ziebart and provide batch certifications to Ziebart.  All batch certifications records shall be maintained by Z-Tech for a minimum of five (5) years from the date of production.

8.   Product Shipment Schedule.  Z-Tech shall, subject to the inventory requirement set forth in paragraph 7 above, ship F.O.B., suppliers location, any Product so ordered by Ziebart in accordance with the following schedule:

  a.   All orders within the continental United States shall be shipped within two (2) days of the receipt of the purchase order;

  b.   All orders for Canada shall be shipped within five (5) days of the receipt of the purchase order;

  c.   All orders for international shall be shipped within ten (10) days of the receipt of the purchase order.

9.   Return Policy.  Upon a customer's claim of defect of a Product, Ziebart will credit the customer and debit Z-Tech for the cost of the Product to the customer including freight in and freight out.  Ziebart will provide Z-Tech full data regarding the determination of the defective Product and the customer involved ("Notice of Debit").   Z-Tech may thereafter conduct its own independent investigation as to the quality of the Product at Z-Tech's expense.  If the parties thereafter agree that the Product is not defective, past the age of Z-Tech's warranty, or not Z-Tech's Product, Z-Tech may return that item to customer with freight collect and rebill Ziebart the original amount debited, so long as same shall be done within thirty (30) days of Z-Tech's receipt of Notice of Debit from Ziebart.

10.   Warranty.  Z-Tech warrants that the Products will conform to Ziebart's specifications and will perform in accordance with the specifications as set forth therein.  Z-Tech further warrants that the Products will be free from defects in material and workmanship.

11.   Product Liability Insurance.   Z-Tech shall maintain product liability insurance coverage in amounts and from an insurance company acceptable to Ziebart, exercising reasonable business judgment, which policies shall name Ziebart as an additional insured and provide for thirty (30) days written notice to Ziebart of insurer's intent to terminate or not renew.  Z-Tech shall annually provide Ziebart with copies of current certificates of insurance.

4

12.   <u>Non-Compliance and Remedies</u>.

<u>Non-Compliance by Ziebart</u>

Ziebart shall be in non-compliance hereunder upon failure to order and pay for a minimum of 650,000 gallons of Product annually as provided by the terms of this Agreement ("Annual Purchase Obligations").

Upon Ziebart being in non-compliance, Z-Tech shall have the right to receive from Ziebart a sum equal to the applicable percentage set forth in Paragraph 4 above of the average TOTAL BASE COST of product purchased in the prior annual period multiplied by the number of gallons of product determined by subtracting the number of gallons actually ordered during the current annual period from 650,000, plus reimbursement for the overhead costs at the rate of $1.35 per gallon of product not shipped to Ziebart of the Annual Purchase Obligation.

For the purpose of the above paragraph, Ziebart shall receive credit against the 650,000 gallon annual requirement for:

a.   each gallon of Product ordered by Ziebart and not shipped by Z-Tech in accordance with the schedule set forth in paragraph 8 above.

b.   each gallon of Product received by Ziebart or any Ziebart customer which is determined to be out of specification.

c.   each gallon of Product purchased by Ziebart from an alternative source occasioned by Z-Tech's inability to provide product in accordance with the terms of this Agreement. However, for the purpose of this paragraph 12(c), Ziebart shall not seek credit for any volume of Product claimed under paragraphs 12(a) and 12(b) above.

<u>Non-Compliance by Z-Tech</u>

Z-Tech shall be in non-compliance hereunder upon failure to:

a.   Timely provide Product in accordance with Paragraph 8;

b.   Provide Product in compliance with Ziebart specifications;

c.   Provide Product at a price in accordance with Paragraph 4 above.

5

Upon Z-Tech being in non-compliance Ziebart shall have the right to purchase Product from an alternative source at such cost, using reasonable business judgment under the circumstances and Z-Tech shall pay to Ziebart the difference between the costs of such Product obtained from the alternative source and Ziebart's cost of Product from Z-Tech pursuant to Paragraph 4 above.  If Ziebart's customer shall purchase Product from an alternative source as a result of Z-Tech's failure to timely deliver in accordance with Paragraph 8 above, or as a result of Z-Tech's Product not meeting specifications.   In addition to Ziebart's right to set off such order, or orders against Ziebart's Annual Purchase Obligations, Z-Tech shall pay Ziebart a sum equal to the loss of Ziebart's gross margin on the product sale, plus Ziebart's royalty loss on any franchisee customer sale loss occasioned by such non-delivery or defective product delivery.

13.   <u>Default and Termination</u>.  Ziebart shall have the right to terminate this Agreement upon the occurrence of any of the following events:

     a.   The delivery by Z-Tech of five (5%) percent or more of the gallons of Ziebart Product orders out of specification during any single annual period of this Agreement or any extensions or renewals thereof;

     b.   The failure of Z-Tech to deliver ninety-five (95%) percent of the Ziebart product orders in accordance with the delivery schedule set forth in Paragraph 8 above during any single Annual Purchase Obligation period of this Agreement or any extensions or renewals thereof;

     c.   An intentional material misrepresentation or repeated unintentional material misrepresentations by Z-Tech in Product pricing to Ziebart;

     d.   Z-Tech's failure to maintain product liability insurance as provided by this Agreement;

     e.   Z-Tech's breach of the confidentiality provisions of this Agreement;

     f.   Any other material breach by Z-Tech of a term or condition of this Agreement, which breach is not cured by Z-Tech within thirty (30) days of written notice of such breach by Ziebart.

Z-Tech shall have the right to terminate this Agreement upon the occurrence of any of the following events:

6

a.  Repeated non-payment by Ziebart of sums due Z-Tech under the terms of this Agreement within the applicable payment period.

b.  Ziebart's breach of the confidentiality provisions of this Agreement.

c.  Any other material breach by Ziebart of any term or condition of this Agreement, which breach is not cured by Ziebart within thirty (30) days of written notice of such breach by Z-Tech.

14.  <u>Right of Set Off</u>.  In the event of a default by Z-Tech and failure to cure under the terms of either the License Agreement, Note or Administrative Services Agreement, of even date between Z-Tech and Ziebart, Ziebart shall have an immediate right to set off such amounts in default against any amounts due Z-Tech under this Agreement.

15.  <u>Ziebart's Right to Formulas</u>.  Z-Tech shall timely provide Ziebart with copies of the master batch formula sheets and know-how instructions on how to produce each formula and modifications thereof which Ziebart shall maintain pursuant to the confidentiality provisions set forth below.

16.  <u>Confidentiality</u>.

a.  The names and addresses of Ziebart franchisees are confidential and proprietary information of Ziebart. Z-Tech shall not sell, assign or disclose to any third party the names and/or addresses of Ziebart's franchisees, except upon written approval of Ziebart.

b.  The Product formulas and modification thereto are confidential and proprietary information of Z-Tech. Ziebart shall not disclose to any third party the formulas or any modification thereof to any third party, except upon written approval of Z-Tech. Notwithstanding the foregoing, Ziebart shall have the right to disclose any Ziebart Product Formula to a third party acting as Ziebart's alternative source if Z-Tech is unable or unwilling to supply Product to Ziebart in accordance with the terms of this Agreement.

17.  <u>Non-Solicitation</u>.  Z-Tech shall not, during the term of this Agreement, or any extension or renewal thereof and for a period of fifteen (15) years after termination thereof, for any reason, solicit, directly or indirectly, Ziebart or Ziebart Tidy Car franchisees product sales.

7

18.  <u>Applicable Law</u>.  This Agreement shall be governed by the Uniform Commercial Code or any other applicable laws effective in the State of Michigan from the date of this Agreement.

19.  <u>Notice</u>.   All  notices,  requests,  demand,  and  other communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered, or mailed registered or certified mail, postage prepaid, return receipt requested, and properly addressed as follows:

        To Ziebart:          Ziebart International Corporation
                             1290 East Maple Road
                             P.O. Box 1290
                             Troy, Michigan 48007-1290
                             Attention: Thomas E. Wolfe, CEO

        With Copies To:      May, Simpson & Strote
                             100  West  Long  Lake  Road,  Suite  200
                             Bloomfield Hills, Michigan 48304
                             Attention: Thomas C. Simpson, Esq.

        To Z-Tech:           Z Technologies Corporation
                             26500 Capital Avenue
                             Redford, Michigan 48239-2597
                             Attention:  Ellis  L.  Breskman,  Ph.D,
                                     President

        With Copies To:      Pepper, Hamilton & Scheetz
                             Suite 400
                             1235 Westlakes Drive
                             Berwyn, PA 19312-2401
                             Attention:  A. John May, III, Esq.

or at such other address as either party may by like notice designate to the other in writing.

20.  <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding among the Parties with respect to the subject matter contained herein and supersedes any prior understandings and agreements among them respecting such subject matter.

21.  <u>Headings</u>.   The headings in this Agreement are for convenience  of  reference  only  and  shall  not  affect  its interpretation.

22.  <u>Gender</u>.  Words of gender may be read as masculine, feminine, or neuter, as required by context.

23.  <u>Severability</u>.  If any provision of this Agreement is held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability will not affect any other provision hereof.  This

8

Agreement shall, in such circumstances, be deemed modified to the extent necessary to render enforceable the provisions hereof.

24. <u>Counterparts</u>.  This Agreement may be executed in counterparts, all of which taken together will constitute one instrument.

25. <u>Waiver</u>.  The failure of any Party to insist upon strict performance of any of the terms, or conditions of this Agreement will not constitute a waiver of any of its rights hereunder.

26. <u>Successors and Assigns</u>.  This Agreement binds, inures to the benefit of, and is enforceable by the permitted successors and assigns of the Parties, and does not confer any rights on any other persons or entities.  Neither party may assign any of its rights or duties under this Agreement without the written consent of the other Party.

27. <u>Amendments and Termination</u>.  This Agreement may be amended, supplemented, and terminated by a written instrument duly executed by all of the Parties.

28. <u>Number</u>.  Words of number may be read as singular or plural, as required by context.

**IN WITNESS WHEREOF**, intending to be legally bound, the Parties hereto have executed this Agreement on the date set forth above.

ZIEBART INTERNATIONAL CORPORATION

BY:  _____
     Its: PRESIDENT

Z TECHNOLOGIES CORPORATION

BY:  _____
     Its: PRESIDENT

9