# EXHIBIT S

```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF MICHIGAN


ZIEBART INTERNATIONAL CORPORATION,

a Michigan corporation,

                 Plaintiff/Counterclaim Defendant,

-vs-             Case No. 2:15-cv-11745-JEL-APP

                 Hon. Judith E. Levy

Z TECHNOLOGIES CORPORATION,

a Michigan corporation,

                 Defendant/Counterclaim Plaintiff,

and

PURE ASPHALT COMPANY,

                 Counterclaim Defendant.
_____/

DEPONENT:     Patricia Lipsky

DATE:         Wednesday, May 25, 2016

TIME:         1:00 p.m.

LOCATION:     1000 Town Center

              22nd Floor

              Southfield, Michigan

REPORTER:     Quentina Rochelle Snowden,

              Certified Shorthand Reporter-5519

              and Notary Public

JOB NO:       2807
```

**Fortz Legal Support**

**www.FortzLegal.com**

**844.730.4066**



```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2

3   ZIEBART INTERNATIONAL CORPORATION,

4   a Michigan corporation,

5                   Plaintiff/Counterclaim Defendant,

6   -vs-            Case No. 2:15-cv-11745-JEL-APP

7                   Hon. Judith E. Levy

8   Z TECHNOLOGIES CORPORATION,

9   a Michigan corporation,

10                  Defendant/Counterclaim Plaintiff,

11  and

12  PURE ASPHALT COMPANY,

13                  Counterclaim Defendant.

14  _____/

15  DEPONENT:      Patricia Lipsky

16  DATE:          Wednesday, May 25, 2016

17  TIME:          1:00 p.m.

18  LOCATION:      1000 Town Center

19                 22nd Floor

20                 Southfield, Michigan

21  REPORTER:      Quentina Rochelle Snowden,

22                 Certified Shorthand Reporter-5519

23                 and Notary Public

24  JOB NO:        2807

25
```

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Pages 2..5

---

Page 2

1   APPEARANCES:

2   BROOKS KUSHMAN, PC

3   By:  Mr. Robert Bradenburg

4   1000 Town Center

5   22nd Floor

6   Southfield, Michigan 48075

7   248-358-4400

8   Rbrandenburg@brookskushman.com

9           Appearing on behalf of the Plaintiff/

10          Counterclaim Defendant.

11

12  JABE LAW FIRM, LLC

13  By:  Mr. Daniel N. Jabe

14  470 Olde Worthington Road

15  Suite 200

16  Westerville, Ohio 43082

17  614-354-4133

18  Djabe@jabelawfirm.com

19      Appearing on behalf of the Defendant/

20      Counterclaim Plaintiff.

21

22

23

24

25

---

Page 3

1   APPEARANCES CONTINUED:

2   LEWIS, BRISOIS, BISGAARD & SMITH, LLP

3   By:  Mr. Darrick J. Hooker

4   550 West Adams Street

5   Suite 300

6   Chicago, Illinois 60661

7   312-463-3408

8   Darrick.hooker@lewisbrisbois.com

9       Appearing on behalf of the Counterclaim

10      Defendant, Pure Asphalt Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

Page 4

1           INDEX PAGE

2   WITNESS:                        PAGE

3   Patricia Lipsky

4   Examination by Mr. Jabe          05

5   (No further examination.)

6

7           EXHIBITS

8   EXHIBIT    DESCRIPTION           MARKED

9   EXHIBIT 13  CORRESPONDENCE DATED   34

10              5-19-11

11  EXHIBIT 14  CORRESPONDENCE DATED   42

12              7-7-11

13  EXHIBIT 15  SETTLEMENT AGREEMENT   43

14

15          (Exhibits attached.)

16

17

18

19

20

21

22

23

24

25

---

Page 5

1   Wednesday, May 25, 2016

2   Southfield, Michigan

3   1:00 p.m.

4           PATRICIA LIPSKY,

5   was thereupon called as a witness herein, and

6   after having first been duly sworn to testify to

7   the truth, the whole truth and nothing but the

8   truth was examined and testified as follows:

9           EXAMINATION

10  BY MR. JABE:

11  Q   Please state your name for the record.

12  A   Patricia Lipsky.

13  Q   And how do you spell your last name?

14  A   L-I-P-S-K-Y.

15  Q   Have you had your deposition taken before?

16  A   No.

17  Q   So, the Court Reporter here is going to be recording

18      everything that you say and it's important, as a

19      result of that, to speak clearly, and to give verbal

20      answers to the questions, because she can't pick up

21      on, or record, a nod or something like that.

22          Do you understand?

23  A   Yes.

24  Q   If you have any questions about -- or let me say

25      this:  If any of my questions are unclear, please

---

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Pages 6..9

Page 6

1   don't hesitate to tell me that and ask me to
2   rephrase. I'm happy to do that if you don't
3   understand a question I'm asking.
4           Is that okay?
5 A   Okay.
6 Q   Do you hold any academic degrees?
7 A   I have my paralegal certificate, and legal -- it's
8       actually called a legal assistant certificate and
9       legal assistant specialist in litigation.
10 Q   And where did you obtain that?
11 A   Oakland University.
12 Q   And when?
13 A   1998.
14 Q   Can you tell me the positions that you've held at
15      Ziebart and the approximate dates that you've held
16      those positions?
17 A   License and trademark manager is my title, and I've
18      held that same title and position since 2007.
19 Q   Is that the only position you've held at Ziebart?
20 A   Yes.
21 Q   Where did you work before you came to Ziebart?
22 A   Wolpoff and Abramson Law Offices, and before that,
23      Federated Capital Corporation.
24 Q   Did you do trademark-related work at either of those
25      places?

Page 7

1 A   No.
2 Q   What does your current position at Ziebart entail?
3 A   Any legal matter comes to me, and I work with our
4       outside attorneys. I handle franchise issues,
5       registering our franchise disclosure document with
6       the various registration states. And I work with --
7       if somebody wants to file a trademark, I work with
8       our outside attorneys to file a trademark.
9 Q   You said at the beginning of your answer that a
10      legal matter comes to you. How does that happen?
11      Or what do you mean by that?
12 A   Any kind of issue that anybody in the building
13      doesn't understand, that they think I can help them
14      with, be it trademark, copyright, litigation, any --
15      anything that would fall under the legal purview, I
16      guess I would say.
17 Q   Have you taken any courses relating to trademark
18      issues?
19 A   I've taken one course at the Trademark Office. I
20      went for -- I guess you would call it a seminar. It
21      was just an overview of trademark law.
22 Q   Do you have a department within Ziebart that you
23      work as part of?
24 A   I'm just the -- I'm the only person who -- in the
25      Legal Department. I'm it.

Page 8

1 Q   Does Ziebart take steps to protects its trademarks?
2 A   Yes.
3 Q   What does Ziebart do?
4 A   We work with our attorneys who monitor if there's
5       a -- if there's any kind of -- if they -- they -- if
6       they see anything. I don't know. They have like a
7       watch service that watches trademarks, you know, if
8       somebody files a trademark, they let me know. And
9       they watch it.
10 Q   Does Ziebart conduct any investigations to determine
11      if someone is using its trademarks?
12 A   I'm not sure what you mean by "investigation." You
13      mean --
14 Q   Do you do any monitoring of the use of names by
15      other companies other than the monitoring you
16      mentioned that counsel does?
17 A   People -- if somebody sees something -- people --
18      you know everyone in the building is aware we have a
19      name and we have trademarks and if anyone sees
20      anything they bring it to my attention or Tom
21      Wolfe's attention.
22         So I guess we're all kind monitoring
23      it in that way, we're very aware and if somebody
24      doesn't know if we have a trademark, they'll come to
25      me and say "Do we have a trademark? Somebody is

Page 9

1       using our trademark."
2 Q   Once someone identifies a possible trademark
3       infringement, what do you do next?
4 A   I call our attorneys.
5 Q   Does Ziebart itself conduct any inquiries as a
6       result of that information that may have been
7       received by the possible trademark usage?
8 A   Inquiries to?
9 Q   For example, does Ziebart make phone calls itself to
10      determine whether somebody is in fact using a
11      trademark, or visit a location to make that
12      determination?
13 A   Yes.
14 Q   And who would do that?
15 A   Usually me. Someone will bring that to my
16      attention.
17 Q   And you might make a phone call to the potential
18      infringer --
19 A   Yes.
20 Q   -- to make a determination?
21 A   Yes.
22 Q   To visit the potential infringer's location to see
23      what they're doing?
24 A   I don't visit if we see something. Sometimes I'll
25      call -- sometimes all you have to do is call and

Page 10

1   I'll call the person infringing and say "Do you know
2   that you're using our mark?"  And they'll say, "No,
3   we weren't aware of it."  I'll say, "Well, you are.
4   Can you remove it?"  They say "Yes."  And that's the
5   end of it.  Or I'll send a letter.
6  Q   Do you ever make calls without revealing your
7   identity?
8  A   No.
9  Q   Do you ever have anyone else make those inquiries,
10   counsel or third parties?
11  A   Yes.
12  Q   Would it include both counsel and third parties?
13  A   Just counsel.
14  Q   Do you always send a cease and desist letter if you
15   believe someone is infringing one of Ziebart's
16   trademarks?
17  A   No.
18  Q   Why would you send one sometimes and not others?
19          MR. BRADENBURG:  Hold on.  If you can
20   answer that without referring to any communications
21   you have with your attorneys, you may answer that.
22   In other words, if your attorneys tell you to do it
23   or not to do it, that's not something he can
24   discover.  But if you make the decision yourself, or
25   in consultation with non-attorneys, then you can

Page 11

1   answer.
2          Do you understand the distinction?
3          THE WITNESS:  I believe so.
4  BY MR. JABE:
5  Q   Let me try to ask the question differently.
6  A   Okay.
7  Q   Setting aside any advice you might receive from the
8   attorneys that you're engaging, what types of
9   considerations do you have in mind when you're
10   making a decision about whether to send a cease and
11   desist letter?
12  A   I always have cost in my mind, and for a period of
13   time I decided I would be the person to send them
14   and I found that it was very ineffective and that --
15   so I -- if a cease and desist letter is going to be
16   sent, I'm almost always consulting an attorney.  If
17   it's something like if somebody sees something on
18   the Internet and they say, "You know, our picture is
19   on the Internet", you know, "Can you do something
20   about it?"  Then I make a judgment call if it's
21   something that I think I can easily handle and just
22   make a phone call to the person and say "Do you know
23   you have our name on the Internet or our picture on
24   the Internet?"  And a lot of times it's very
25   innocent, they don't know they do.  They'll be

Page 12

1   cooperative and say "Yes."  Then I'll make a
2   judgment call if I think I can do it myself, I'll do
3   it.  But for cease and desist letters now I almost
4   always send it or I do always send it to an
5   attorney.
6  Q   Do you ever identify infringements and determine
7   that it's not worth sending a cease and desist
8   letter?
9  A   Yes.
10  Q   Since you began working at Ziebart, how many cease
11   and desist letters has Ziebart or its counsel sent
12   claiming trademark infringement?
13  A   I don't know.
14  Q   Can you provide a rough estimate?
15  A   I don't know.  I'm sorry.  I -- I -- a lot.  I don't
16   know.  I mean, I couldn't say for sure.
17  Q   Would it be more than 50 since 2007?
18  A   I wouldn't say more than 50.
19  Q   About 50?
20  A   No.  Maybe 30.
21  Q   In the past year, can you tell me roughly how many
22   cease and desist letters have you sent claiming
23   trademark infringement or its counsel has sent on
24   Ziebart's behalf?
25  A   Maybe four.

Page 13

1  Q   You testified earlier that Ziebart will sometimes
2   identify trademark infringement but not send a cease
3   and desist letter; is that correct?
4  A   I don't know if -- I don't know if -- I don't know
5   if you call it trademark infringement.  We have seen
6   pictures that we have shot videos of that somehow
7   get on the Internet, I don't know that they're
8   necessarily trademark infringement.
9  Q   Would it be fair to say you've seen things that you
10   would identify as possibly trademark infringement?
11  A   Yes.
12  Q   And then decide not to send cease and desist
13   letters?
14  A   Yes.
15  Q   Are there circumstances where you send cease and
16   desist letters and the person that you send it to
17   complies with your requests?
18  A   Yes.
19  Q   Are there also circumstances where they do not?
20  A   Yes.
21  Q   When they do not, do you always file a lawsuit?
22  A   No.
23  Q   Other than the advice of counsel, what would be some
24   considerations that Ziebart would have in deciding
25   whether to file a lawsuit under those circumstances?

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Pages 14..17

Page 14

1 A  Could you repeat the question again?
2 Q  Other than advice from counsel --
3         MR. JABE:  Actually could you read
4   that back.
5         (The indicated portion of the record
6   was read back as follows:
7         "Q   Other than the advice of counsel,
8   what would be some considerations that Ziebart would
9   have in deciding whether to file a lawsuit under
10   those circumstances?")
11 BY MR. JABE:
12 Q  The circumstances were when the person who received
13   the cease and desist letters did not comply, why
14   would you decide not to file a lawsuit against
15   someone like that, other than --
16 A  I don't know that I can say.  It's not my decision.
17 Q  Whose decision is that?
18 A  It would be probably between Tom Wolfe and our
19   attorney.
20 Q  Since you began working at Ziebart, how many
21   lawsuits has Ziebart filed claiming trademark
22   infringement?
23 A  I don't know.
24 Q  Can you give a rough estimate?
25 A  Maybe five.

Page 15

1 Q  How many lawsuits in the last year?
2 A  Two or three.
3 Q  But you think it might only be five since 2007?
4 A  Did you say lawsuits that we filed or that we were
5   involved in or --
6 Q  That you filed.  That Ziebart filed.
7 A  I don't know an exact amount because not all of them
8   come directly from us.  Some of them go to -- some
9   of them go to our Collection Department who in turn
10   they -- the collection agency hires attorneys to sue
11   on our behalf, so I can't -- I don't know that I --
12   I would know everybody.
13 Q  I'm only talking about trademark infringement suits,
14   not collection suits.
15         MR. BRADENBURG:  I object to your
16   question.  It's assuming there's a difference
17   between trademark infringement and --
18         MR. JABE:  I do assume there is a
19   difference.  If there isn't one --
20 BY MR. JABE:
21 Q  What is a collection suit that Ziebart might
22   initiate?
23 A  If someone has outstanding royalties, if they're
24   terminated or if they voluntarily discontinue being
25   a Ziebart franchisee, and they owe us money, usually

Page 16

1   a lot of times it's both trademark and collection.
2   They'll owe us money and they'll still have their
3   Ziebart sign still on.  So a lot of times -- a lot
4   of times it will be both.
5         So, I mean, I don't know that I know
6   an exact amount, but I -- since I've been there, at
7   least 5, maybe more.
8         MR. JABE:  Okay.  Can we go off the
9   record for a minute.
10         (Off the record at 1:21 p.m.)
11         (Back on the record at 1:21 p.m.)
12 BY MR. JABE:
13 Q  What investigations has Ziebart done since you began
14   working, to determine if Z Tech is using its
15   trademarks?
16         Let me first ask you, are you familiar
17   with Z Technologies Corporation?
18 A  Yes.
19 Q  And that's my client, you understand?
20 A  Yes.
21 Q  So the question is:  What investigation has Ziebart
22   done since you began working there to determine if Z
23   Tech is using its trademarks?
24 A  When you say "Z Tech" you mean Z Technologies?
25 Q  Yes.

Page 17

1 A  Because there are other Z Techs --
2 Q  My client, Z Technologies.
3         MR. BRADENBURG:  All of this is to the
4   extent it involves communications with attorneys, he
5   is not entitled to know what those discussions are,
6   what you did as a result of instructions from your
7   attorneys.
8         But to the extent you did it
9   independent of the attorneys, you can answer those
10   questions.
11         Do you understand the distinction
12   there?
13         THE WITNESS:  Yes.
14         MR. JABE:  Are you instructing her not
15   to answer and disclose any investigations that
16   involved attorneys?
17         MR. BRADENBURG:  If she undertook any
18   investigation at the direction of an attorney,
19   that's work product and is not discoverable, at
20   least not the details of it.  If you ask "Have you
21   done investigations", but now you're asking what
22   type of investigations, which is your next step.
23 BY MR. JABE:
24 Q  Have you done any investigations since you began
25   working at Ziebart, to determine whether Z

Page 18

1    Technologies is violating Ziebart's trademarks?
2  A   Yes.
3  Q   When was the first time that you learned that Z Tech
4     might be using one of Ziebart's trademarks?
5          MR. BRADENBURG:  Again, you can answer
6     that -- well, this is -- you can answer when.
7          THE WITNESS:  2011.
8  BY MR. JABE:
9  Q   And what was the trademark at issue?
10 A   There were, as I recall, three, the Ziebart name, Z
11    Guard and Z Shield.
12 Q   Prior to 2011, did you have any information
13    suggesting that Z Tech was violating any of
14    Ziebart's trademarks?
15 A   I didn't personally.  I don't know if anyone else
16    did.
17 Q   After learning the information you described about
18    the three names -- and what were those names again?
19 A   Ziebart, Z Guard and Z Shield.
20 Q   Can you spell those?
21 A   The way they spelled it -- the way Z Technologies
22    spelled it was Z, space, Guard.  I can't remember if
23    they -- if they -- I think they spelled it
24    G-U-A-R-D.  I know it was spelled differently than
25    ours, but we had a trademark called Z-GARD also and

Page 19

1    I don't recall how they spelled Z Shield, how they
2     did it exactly, but it was different than ours.
3  Q   What did Ziebart do after learning this information?
4  A   I believe I sent a cease and desist letter.  I
5     believe that -- that I did.
6  Q   Was this something that you determined yourself from
7     Google searches?
8  A   No.
9  Q   Did somebody else in the company determine that?
10 A   Yes.
11 Q   Who was that?
12 A   I believe it was our former employee, Mike Pino.
13 Q   Former employee contacted Ziebart --
14 A   He was employed at the time.  He's a former employee
15    now.  At the time he was employed and I believe he
16    was the one who brought it to my attention.
17 Q   So he saw Ziebart's -- sorry, he saw Z Tech's
18    website and brought it to your attention?
19 A   Yes.
20 Q   What was Mike Pino's job responsibilities at the
21    time?
22 A   I believe he was senior vice president.
23 Q   Was he senior vice president over any particular
24    subject matter?
25 A   No.  I believe he was senior vice president of the

Page 20

1     corporation -- of Ziebart International.  But I
2     think he primarily was selling franchise salesman.
3  Q   Okay.  Can you recall any other instances where you
4     learned that Z Tech might be using one of Ziebart's
5     trademarks?
6  A   Yes.
7  Q   And what other instances can you recall?
8  A   Formula Q.
9  Q   And when did you learn that?
10 A   2014.
11 Q   And what did you learn about Z Tech's use of the
12    name Formula Q?
13 A   That there were some stickers with the name on it at
14    a facility in Indiana.
15 Q   And did you discover that personally?
16 A   No.
17 Q   Did someone else at Ziebart discover that?
18 A   Yes.
19 Q   And who was that?
20 A   I believe it was Thomas Wolfe Jr.  Someone had
21    brought it to his attention.
22 Q   Do you know who that was?
23 A   I believe it was somebody from Pure Asphalt.
24 Q   Do you know where in Indiana?
25 A   No.

Page 21

1  Q   Do you know the business in Indiana or what the
2     circumstances were?
3  A   I don't recall.
4  Q   Was this a Ziebart customer?
5  A   I don't know.
6  Q   And to make sure that I understand, what's your
7     understanding of what the use of the name Formula Q
8     was that you learned about at that time in 2014?
9     What was happening with the name that you learned?
10 A   That they had the name on a -- there was a sticker
11    on a -- I can't remember if it was a barrel or if it
12    was some -- it was on something, there were two or
13    three of them at a -- at a place in Indiana.  That's
14    all I know.
15 Q   Had you ever heard about Z Tech using the name
16    "Formula Q" before then?
17 A   I hadn't personally.
18 Q   You hadn't personally heard?
19 A   I don't know if anybody else did, but I hadn't
20    myself.
21 Q   Sure.  Nobody said anything to you about it prior to
22    them?
23 A   Right.
24 Q   So you had no awareness that they were using the
25    name?

Page 22

1 A  Right.
2 Q  Can you recall any other instances where you learned
3    that Z Tech might be using one of Ziebart's
4    trademarks?
5 A  No.
6 Q  Did you ever have any discussions with anyone at
7    Ziebart about Z Tech using any of Ziebart's
8    trademarks prior to the time you began working
9    there?  And what I mean by that is, not before you
10   started working there did you have discussions, but
11   after you started working there, did you have any
12   discussions about the use of trademarks by Z Tech
13   before you had started?
14       MR. BRADENBURG:  Let me interject
15   here.  She is part of the litigation team, so
16   obviously throughout the litigation that has been
17   discussed.  And are you trying to confirm that
18   she -- you know, that that's been discussed
19   repeatedly during the litigation?
20       MR. JABE:  No.
21       MR. BRADENBURG:  Okay.  So, can you
22   limit it to some time frame before they talked to
23   attorneys or -- I don't know how you want to phrase
24   it.
25 BY MR. JABE:

Page 23

1 Q  Outside of the context of this dispute, when you
2    were working at Ziebart, did you have any
3    discussions with people about Z Tech using Ziebart's
4    trademarks in the past, other than the instances we
5    just discussed?
6 A  I -- I didn't -- I don't think so.  I -- I knew that
7    we had been in a dispute with some -- some Z Tech
8    people and that was -- they were dealers.  So if
9    they did, that's who I thought they were talking
10   about.  I didn't know anything about Z Technologies
11   itself.
12 Q  So you didn't know there had been a prior to lawsuit
13   between Ziebart and Z Technologies?
14 A  They might have told me, but I didn't -- I didn't
15   understand what -- that it was this company.  I
16   thought it was the Z Tech dealers.  So they might
17   have mentioned it, but I didn't -- I didn't -- I
18   didn't know until 2011 who they were, who your
19   client was.
20 Q  Did you know that at the time of the 2011 issues we
21   discussed, that Z Technologies was formed from a
22   part of Ziebart?
23 A  No.  I might have been told that, but I didn't
24   understand it.  I didn't understand it.  I still
25   thought it was the Z Tech dealers.

Page 24

1 Q  What about by the time you got to the 2014 issue
2    with respect to Formula Q you just mentioned, did
3    you have that understanding then?
4 A  Yeah, then I understood it.
5 Q  Did you know that they had acquired the product
6    Formula Q from Ziebart?
7        MR. BRADENBURG:  Objection.  Are you
8    asking hearsay?  If she -- she wasn't around in 2019
9    (sic) so are you asking for hearsay?  That's what
10   I'm asking.  Because I'll object to hearsay.
11       MR. JABE:  This is a speaking
12   objection, and I don't even fully understand it.
13 BY MR. JABE:
14 Q  But, my question is:  In 2014, when you learned that
15   Z Tech was using the name "Formula Q", did you have
16   any understanding that Z Tech had purchased the
17   formula for Formula Q from Ziebart's Products Group
18   in the 1990s?
19 A  When it was initially brought to me, no.  As --
20       MR. BRADENBURG:  Well, objection.  If
21   you're going past the initial time, you have -- I
22   would object to the extent you're talking about any
23   attorney/client privileges.  Answer -- well, you can
24   answer his question.
25       Do you want to ask after the initial

Page 25

1    period, which I think is what she's leaning towards?
2 BY MR. JABE:
3 Q  Without revealing any attorney/client
4    communications, you eventually came to learn that Z
5    Tech acquired the product formula --
6        MR. BRADENBURG:  Objection.
7 BY MR. JABE:
8 Q  -- is that right?
9        MR. BRADENBURG:  There's no testimony
10   to that effect.  Lacks personal knowledge.
11       MR. JABE:  I'm sorry, Bob, every
12   objection you're making is a speaking objection.  I
13   don't mind cutting you some latitude with respect to
14   that from time to time, but these are not
15   appropriate objections.  You can object to form, and
16   if I have a question about what that objection is,
17   I'll ask.
18       But I would appreciate it if you would
19   refrain from objecting and speaking at length about
20   the issues and coaching the witness about the
21   answers.
22       I respect the privilege issues, and
23   I'm trying very hard to avoid them, and I have no
24   issues with the objections on that front.  But with
25   respect to the other issues, I would appreciate it

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Pages 26..29

Page 26

1  if you would keep them shorter.
2        MR. HOOKER:  He can object to the form
3  of the question like you said, but I don't think
4  that his speaking objections are coaching the
5  witness.  I think that he's making sure the witness
6  is cautious or not invading or violating the
7  attorney/client and work product privilege doctrine
8  to privilege --
9        MR. BRADENBURG:  Mr. Jabe, maybe it's
10  because I have knowledge you don't have, but I know
11  that the attorneys were involved in this case almost
12  immediately.  And you can confirm that with her.
13        So every time you're asking anything
14  beyond that initial moment, I'm getting very
15  uncomfortable.
16        MR. JABE:  I understand that.
17        MR. BRADENBURG:  So, you know, if you
18  want to confirm that the attorneys were involved
19  almost immediately afterwards, then you'll have a
20  better context for, you know, why I'm, as you say,
21  uncomfortable, and, you know, on edge here.
22        MR. JABE:  I appreciate the privilege
23  issues.  I really do.  I have no problem whatsoever
24  with that.  I thought that some of the objections
25  were about other topics that you were talking about

Page 27

1  some other things in addition to privilege.  That's
2  the part I'm talking about.  Let's just continue
3  and, you know, we -- I will continue to try to be
4  mindful of privilege issues, and you should feel
5  free to object with respect to those, and help me
6  avoid asking questions that will reveal privilege
7  information.
8        MR. HOOKER:  I was just going to say,
9  to the extent that no attorneys were involved, maybe
10  preface the questions like that.
11        MR. JABE:  Sure.  Sure.
12  BY MR. JABE:
13  Q  Let me ask you a question on a different topic.
14        Well, you became aware that Z Tech was
15  using the name Formula Q in 2014 because somebody
16  reported to you that they saw drums with a label on
17  it in Indiana?
18  A  Yes.
19  Q  Do you recall what month of the year that was?
20  A  July.
21  Q  Did anyone inform Z Technologies about that at the
22  time?
23        MR. BRADENBURG:  Again, to the extent
24  you can answer without referring to communications
25  with counsel, you may do so.

Page 28

1  BY MR. JABE:
2  Q  Did you notify anyone at Z Tech about that at the
3  time?
4  A  No.
5  Q  Did you instruct anyone to notify Z Tech about that?
6        MR. BRADENBURG:  To the extent you can
7  answer that question without referring to
8  communications with counsel, you may do so.
9        THE WITNESS:  I don't think I can
10  answer it without what I talked about with our
11  attorney.
12  BY MR. JABE:
13  Q  Okay.  When did someone from Ziebart notify Z Tech
14  that it was using the name Formula Q, allegedly in
15  violation of Ziebart's trademarks?
16        MR. BRADENBURG:  If you can answer
17  that question without reference to communications
18  with counsel, you may do so.  Otherwise I'm going to
19  instruct you not to answer.
20        THE WITNESS:  I can't answer that
21  without talking about with the attorney.
22  BY MR. JABE:
23  Q  You can't tell me when Ziebart told Z Tech that it
24  was violating its trademarks?
25  A  We didn't contact Z Tech.  Our attorneys did.

Page 29

1  Q  Do you know when that happened?
2        MR. BRADENBURG:  If you can answer
3  that without communications with counsel, you may do
4  so.  Otherwise I'd instruct you not to answer.
5        THE WITNESS:  I can't answer without
6  talking about what I talked about with our attorney.
7        MR. JABE:  Can we go off the record
8  for a minute?
9        (Off the record at 1:40 p.m.)
10        (Back on the record at 1:43 p.m.)
11  BY MR. JABE:
12  Q  Why did Ziebart apply for trademark registration for
13  Formula Q in 2014?
14        MR. BRADENBURG:  I instruct the
15  witness, if she can answer that without reference to
16  attorney/client communication, you may answer.
17  Otherwise, I'd instruct you not to answer.
18        THE WITNESS:  It was something our
19  attorney --
20        MR. BRADENBURG:  If it's a
21  communication with counsel, I'd instruct you not to
22  answer.
23        THE WITNESS:  Oh, I'm sorry.
24        MR. BRADENBURG:  So I'm instructing
25  her not to answer.

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Pages 30..33

Page 30

1 BY MR. JABE:
2 Q   Do you know who made the decision to apply for
3    trademark registration at Ziebart?
4         MR. BRADENBURG: If that was part of a
5    communication with counsel in anticipation of
6    litigation, I would instruct the witness not to
7    answer. If it's done for another reason not
8    involving counsel, you may answer.
9 BY MR. JABE:
10 Q   So the question is: Who at Ziebart made the
11    decision to seek trademark registration for Formula
12    Q?
13 A   **It was between our -- our attorney, both of us. Our**
14    **attorney and us.**
15 Q   Would you be the person at Ziebart who was making
16    that decision?
17         MR. BRADENBURG: Objection. She just
18    said it was involving counsel.
19         MR. JABE: I'm not asking about
20    counsel. I'm not asking about that part of it. I'm
21    asking who the Ziebart person is that is directing
22    counsel.
23         MR. BRADENBURG: Are you saying who
24    was involved in the decision? You can find out
25    names. You can't find out substance. You're asking

Page 31

1 who made the decision.
2         MR. JABE: Who made it?
3         MR. BRADENBURG: And a decision was
4 made in conjunction with counsel, that involves
5 communications. You can ask if she was involved in
6 the process, if she was involved in discussions with
7 counsel regarding that subject matter.
8         You know, and -- but you can't go into
9 what the substance was.
10         MR. JABE: I'm not going into the
11 substance.
12         MR. BRADENBURG: Yes, you are. You're
13 saying who made a decision? That's substantive.
14 The decision is substantive.
15         MR. JABE: The privilege doesn't
16 protect that. The question is: Who made the
17 decision to seek trademark registration; was it Ms.
18 Lipsky, was it Tom Wolfe, who did that?
19         MR. HOOKER: The issue is that's a
20 legal decision to seek --
21         MR. JABE: I'm not asking about the
22 legal connection. I'm just asking who within the
23 company --
24         MR. HOOKER: The decision itself
25 involves legal expertise.

Page 32

1         MR. JABE: I'm not asking about it.
2 I'm asking who --
3         MR. BRADENBURG: But she's already
4 told you it was a joint decision between counsel and
5 her. So you can't go into what decisions, what
6 occurred within that purview.
7         MR. JABE: Counsel provide advice.
8 They don't make decisions. Clients make decisions.
9 And I'm asking who at the client made the decision.
10 It's not a privileged communication. I'm not
11 asking --
12         MR. BRADENBURG: You're assuming that
13 attorneys don't make decisions. I know in many
14 cases that client -- attorneys do make decisions.
15 And in this case, she said attorneys were involved
16 in, you know, the decision-making process. So I'm
17 trying not to get you into what discussions were
18 had.
19         MR. HOOKER: Your answer assumes that
20 in-house counsel at a client did not make the
21 decision. They're still part of the client.
22 They're still attorneys as well.
23         MR. JABE: I still don't think that's
24 privilege.
25         MR. BRADENBURG: I obviously know you

Page 33

1 don't think it. But I am very hesitant to let her
2 testify on communications with counsel.
3         MR. JABE: Okay.
4         MR. BRADENBURG: Now you've seen what
5 was filed. You can ask her things like "Did you
6 sign the application?" I don't know if she did or
7 not. You know, factual-based, things like that.
8 But -- you can ask if the application was filed.
9 That's factual. But you can't ask why or who
10 decided if it was, you know, work product-related.
11 BY MR. JABE:
12 Q   Did anyone at Ziebart tell Z Tech that it was
13    applying for trademark registration for Formula Q?
14 A   **A notice goes out from the Trademark Office, but**
15    **ourselves, I don't believe we did.**
16 Q   Did anybody write a letter?
17 A   **I don't think so, no.**
18 Q   Are you aware of anybody making a phone call?
19 A   **I don't know that. I don't know if anyone did.**
20 Q   But you didn't?
21 A   **I didn't.**
22 Q   And you were not aware at the time that Z Tech had
23    been using the name for 20 years?
24         MR. BRADENBURG: Objection. I
25 instruct the witness not to answer to the extent it

Page 34

1  involves communications with counsel.  If you can
2  answer not based upon communications involving
3  counsel, you may do so.
4        **THE WITNESS:  Can you repeat the**
5  **question.**
6        MR. JABE:  Can you read it back.
7        (The indicated portion of the record
8  was read back as follows:
9        "Q   And you were not aware at the
10  time that Z Tech had been using the name for 20
11  years?")
12       MR. BRADENBURG:  Why don't you clarify
13  what time you're referring to "At the time."
14 BY MR. JABE:
15 Q  When the trademark registration application was
16  filed in 2014, were you aware that Z Tech had been
17  using the name for 20 years?
18       MR. BRADENBURG:  I will instruct the
19  witness not to answer to the extent it involves
20  communications with counsel.  If you can answer
21  without reference to communications with counsel,
22  you may do so.
23       **THE WITNESS:  No.**
24 BY MR. JABE:
25 Q  Let me show you an Exhibit.

Page 35

1        (Deposition Exhibit No. 13 was marked
2  for identification.)
3        MR. BRADENBURG:  This is 13?
4        THE COURT REPORTER:  Yes.
5 BY MR. JABE:
6 Q  This document is Bates stamped ZIE 272 to ZIE 274.
7  And lawyers refer to Bates stamping as the serial
8  numbers at the bottom corners, pages.
9        Did I read that correctly, 272 through
10  274?
11 **A  Yes.**
12 Q  This document has your signature on it, correct?
13 **A  Yes.**
14 Q  And this is a letter you sent to Ellis Breskman of Z
15  Tech on May 19th of 2011, correct?
16 **A  Yes.**
17 Q  What caused you to write this letter?
18 **A  I believe this is when Mike Pino brought to my**
19  **attention that our names were being used on -- on**
20  **the website home page of Z Technologies.**
21 Q  And you say that Z Tech is infringing Ziebart's
22  trademarks by using the names Z Shield and Z Guard,
23  correct?
24 **A  Correct.**
25 Q  And here, Z Shield is spelled Z, space, S-H-I-E-L-D?

Page 36

1 **A  Correct.**
2 Q  And it's spelled that way at this time by Z Tech and
3  Ziebart?
4 **A  We have the dash.**
5 Q  You have a dash between the Z and the S?
6 **A  Right.**
7 Q  And Z Tech is using the name Z Guard, capital Z,
8  capital G-U-A-R-D with a space between the Z and G,
9  correct?
10 **A  Correct.**
11 Q  And Ziebart's version is capital Z-E-E-G-A-R-D,
12  right?
13 **A  Correct.**
14 Q  And you say that Z Tech is infringing Ziebart's
15  trademarks by using the name Z Shield and Z Guard,
16  right?
17 **A  Right.**
18 Q  And you say in your letter that Ziebart owns those
19  names, correct?
20 **A  Right. Yep.**
21 Q  What was the basis for the allegation that Z Tech
22  was infringing the trademarks of Ziebart?
23 **A  What was the basis?  It was they had**
24  **their -- they're the same name.  They're the same**
25  **sounding name.  They're just spelled slightly**

Page 37

1  **differently.**
2 Q  Before you sent the letter, did you make any
3  inquiries as to whether Z Tech had the right to use
4  those names?
5 **A  I might have looked on the trademark -- the U.S.**
6  **Trademark Office to see if they had a**
7  **registered trademark for them.**
8 Q  Did you ask anybody at Ziebart whether they knew if
9  Z Tech had been using those names before?
10 **A  No.**
11 Q  Do you have any awareness of whether they had been
12  using those names for many years prior to you
13  signing the letter?
14 **A  No.**
15 Q  You also reference a 2009 opinion by the Trademark
16  Trial and Appeal Board on the letter, it's on the
17  first page; is that right?
18 **A  Yes.**
19 Q  Why did you quote that opinion?
20 **A  I believe that decision had just -- maybe not.  I**
21  **thought maybe it had just come down.  I think I was**
22  **trying to show that -- that they were saying that**
23  **the Z Shield name was ours, Z-Liner name was ours,**
24  **that there was something unique about the fact that**
25  **-- that we used -- the way -- the way we spelled it;**

Page 38

1     and that they were close to violating that.
2  Q   And this opinion, as I understand this paragraph, is
3     essentially concluding that the name Z Tech used by
4     another party, is violating Ziebart's trademark
5     rights; is that understanding correct?
6  A   Yes.
7  Q   That's how you understood it?
8  A   Yes.
9  Q   And it appears from this portion quoted that Ziebart
10    was taking a position in that dispute that the name
11    Z Tech used by someone else violated Ziebart's
12    trademarks; is that your understanding?
13 A   Yes.
14 Q   To your knowledge, has Ziebart ever claimed that my
15    client, Z Tech, cannot use the name Z Tech?
16            MR. JABE:  Objection to the extent it
17    requires discussions with counsel.  If it doesn't
18    involve discussions with counsel, you may answer.
19            THE WITNESS:  Can you say that one
20    more time.
21            MR. JABE:  Can you read the question
22    back, please.
23            (The indicated portion of the record
24    was read back as follows:
25            "Q   To your knowledge, has Ziebart

Page 39

1     ever claimed that my client, Z Tech, cannot use the
2     name Z Tech?")
3            THE WITNESS:  No.
4  BY MR. JABE:
5  Q   Did Ziebart tell the Trademark Trial and Appeal
6     Board that my client Z Tech has been using that name
7     since 1996 without objection from Ziebart?
8            MR. BRADENBURG:  What date was that?
9            MR. JABE:  1996.
10            THE WITNESS:  I'm sorry, can you
11    repeat the question?
12 BY MR. JABE:
13 Q   Did Ziebart tell the Trademark Trial and Appeal
14    Board that my client, Z Tech, has been using the
15    name Z Tech since 1996 without objection from
16    Ziebart?
17 A   I don't know.
18 Q   Why would Ziebart have the right to control a third
19    party's use of my client's name?
20            MR. BRADENBURG:  Excuse me, can you
21    repeat that?
22            (The indicated portion of the record
23    was read back as follows:
24            "Q   Why would Ziebart have the right
25    to control a third party's use of my client's

Page 40

1     name?")
2            MR. BRADENBURG:  Same objection.  If
3     it involves communications with counsel, you're not
4     to answer.  If you can answer it otherwise, you may
5     do so.
6            THE WITNESS:  I'm sorry, can you
7     repeat that question one more time?
8            (The indicated portion of the record
9     was read back as follows:
10            "Q   Why would Ziebart have the right
11    to control a third party's use of my client's
12    name?")
13            MR. BRADENBURG:  I object.  You're
14    asking for a legal conclusion.
15            MR. JABE:  I appreciate the objection.
16            THE WITNESS:  I don't know.
17 BY MR. JABE:
18 Q   Do you believe that my client is not allowed to use
19    the name Z Tech?
20            MR. BRADENBURG:  Mr. Jabe, this is far
21    afield from any issue here.  It has no relevance.
22    We've been going on about use by Z Tech, which is
23    not an issue in this litigation.  If there's some
24    relationship -- but you're asking her for legal
25    conclusions, and she's a non-attorney, and you know,

Page 41

1     I don't see what relevance this has to it.  And I'm
2     inclined to ask a court to restrict the issues to
3     this case, because I don't want legal admissions
4     being made by a non-attorney on behalf of Ziebart.
5            But if -- I just don't understand
6     where we're going with this, my bottom line.
7            MR. JABE:  It's in the letter and I'm
8     trying to understand why, and --
9            MR. BRADENBURG:  Yes, but that letter
10    doesn't relate to this lawsuit.
11            MR. JABE:  Well, sure it does.
12            MR. BRADENBURG:  No, it doesn't.
13            MR. JABE:  Yes, it does.
14            MR. BRADENBURG:  Are you saying we're
15    preventing you from using Z Tech in this lawsuit?
16            MR. JABE:  This is a letter --
17            MR. BRADENBURG:  Yes.
18            MR. JABE:  -- that leads up to the
19    2012 settlement agreement which is an issue in the
20    case.
21            MR. BRADENBURG:  Then ask about the
22    letter.  Yes, but not as to whether we can sue you
23    on Z Tech, which is not an issue to this case, and
24    is not a subject matter of this letter or any other
25    letter or document in this litigation.

Page 42

1          I mean, if you ask factual questions,
2    she can try to answer.  But asking her legal
3    opinions on something that's not relevant to this
4    litigation is very worrisome to me as an attorney.
5          MR. JABE:  I have another Exhibit for
6    you, that is 14.
7          (Deposition Exhibit No. 14 was marked
8    for identification.)
9  BY MR. JABE:
10 Q   So you've been handed Z Tech's Exhibit Number 14.
11    This document is Bates stamped ZIE 994 to ZIE 997;
12    is that right?
13 A  Yes.
14 Q   And this document has your signature on it; is that
15    right?
16 A  Yes.
17 Q   And this is a letter that you sent to Ellis Breskman
18    of Z Tech on July 7th, 2011; is that right?
19 A  Yes.
20 Q   And what caused you to write this letter?
21          MR. BRADENBURG:  Let me interject here
22    that if you can answer that without referring to
23    advice from counsel, you may do so.  Otherwise, I
24    will instruct you you're not to answer.
25          THE WITNESS:  (Reviewing.)  I -- I

Page 43

1    don't know.  I don't remember.
2  BY MR. JABE:
3  Q   In the letter, you identify specific alleged
4    trademark violations on Z Tech's website to which
5    Ziebart is objecting; is that correct?
6  A  Yes.
7  Q   The alleged trademark violations occur in several
8    places on the website; is that right?
9  A  Yes.
10 Q   And you quote those portions of the website,
11    correct?
12 A  Yes.
13 Q   And you were quoting those to show Z Tech where the
14    problems on the website were, right?
15 A  Right.
16 Q   Did you ever tell Z Tech about any other specific
17    portions of Z Tech's website to which Ziebart
18    objected?
19 A  Did I ever or at this --
20 Q   Ever?
21 A  No.
22          MR. JABE:  I'm handing you Z Tech's
23    Exhibit 15.
24          (Deposition Exhibit No. 15 was marked
25    for identification.)

Page 44

1  BY MR. JABE:
2  Q   And this document is Bates stamped ZIE 280 to ZIE
3    282; is that right?
4  A  Yes.
5  Q   Have you seen this document before?
6  A  Yes.
7  Q   And it's a 2012 settlement agreement between Ziebart
8    and Z Tech, correct?
9  A  Yes.
10 Q   Okay.  And this relates to the dispute that was
11    subject of your letters of May 19th and July 7th,
12    right?
13 A  Yes.
14 Q   In the middle of the page, five paragraphs down, it
15    says that Z Technologies is the owner of the mark Z
16    Shield in certain context; is that correct?
17 A  Correct.
18 Q   And then it says in the next paragraph, Z
19    Technologies is the owner of Z Guard, the mark Z
20    Guard in certain context also; is that correct?
21 A  Correct.
22 Q   Now, in your May 19th, 2011 letter, you said that
23    Ziebart owned those names and that Z Tech was
24    infringing by using them; is that correct?
25 A  Yes.

Page 45

1  Q   And in the letter you didn't acknowledge that Z Tech
2    had any right to the names; is that right?
3  A  I didn't say that.  I just -- I said they were
4    infringing on ours.  I didn't say they -- I
5    guess -- I guess -- I don't know if that infers they
6    didn't have a right.  I was just saying they were
7    infringing on ours.
8  Q   Was your letter on May 19th, 2011 mistaken?
9          MR. BRADENBURG:  Objection.  That's
10    getting into all kinds of legal questions.
11          You're -- the way you've done it is
12    there's a legal document that you know was
13    negotiated by counsel, and now you're using that to
14    suggest -- go back in time.  You know, you're
15    impacting all kinds of attorney communications that
16    occurred during that time period.  And I would
17    instruct her not to answer.  There's just no way
18    that can be answered without impacting
19    attorney/client communications.
20 BY MR. JABE:
21 Q   Section 5 of the settlement agreement on page ZIE
22    281, states that Z Tech will remove the name
23    Ziebart, Z Guard and Z Shield from its website
24    within 30 days; is that right?
25 A  Yes.

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES                                    Job 2807
Patricia Libsky                                                             Pages 46..49

Page 46

1 Q   Now, in this lawsuit, Ziebart is claiming that Z
2     Tech has breached this agreement by using Ziebart's
3     name in meta tags on Ziebart's website; is that
4     right?
5 A   Yes.
6 Q   Ziebart is claiming that Z Tech should have removed
7     Ziebart's name from the meta tags on the website; is
8     that right?
9 A   Yes.
10 Q  What is meta tag?
11 A  **I don't know.  I didn't draft the lawsuit.  Our**
12    **attorneys drafted it.**
13 Q  So you don't know what a meta tag is?
14 A  **I know it's something that identifies you on the**
15    **website.**
16 Q  You never told Z Tech in your 2011 letters that
17    Ziebart objected to Z Tech's use of meta tags; is
18    that right?
19 A  **Correct.**
20 Q  Why not?
21 A  **I didn't know what they were.  I never -- I -- I**
22    **didn't know what they were.  That wasn't until**
23    **counsel drafted the Complaint.**
24        MR. BRADENBURG:  You don't want to go
25    into discussions with counsel.  So the answer is

Page 47

1     what happened at the time you wrote the letter.
2 BY MR. JABE:
3 Q   Yeah, just stick to that.
4 A   **I didn't know what they were.**
5 Q   You didn't know that they were there?
6 A   **Right.**
7 Q   If Z Tech thought that the parts of the website it
8     was supposed to change were the parts you mentioned
9     specifically in your letters, wouldn't that be
10    reasonable of Z Tech?
11        MR. BRADENBURG:  Objection.  You're
12    asking what someone else thought.
13        MR. JABE:  Bob --
14        MR. BRADENBURG:  You're asking her --
15        MR. JABE:  I understand, but it's a
16    speaking objection.  You can object and I note your
17    objection.
18        MR. BRADENBURG:  That's what I said,
19    then you started talking to me, so I started talking
20    back.  All I said was, it's asking what someone
21    else --
22        MR. JABE:  I didn't start talking back
23    to you.  I asked a question and you started
24    providing a --
25        MR. BRADENBURG:  I think your record

Page 48

1     would indicate you started talking to me, but be
2     that as it may.
3 BY MR. JABE:
4 Q   Let me restate the question.
5        If Z Tech thought the parts of its
6     website were supposed to change were the parts you
7     specifically mentioned in your letters, wouldn't
8     that be reasonable of Z Tech?
9 A   **I don't know.**
10 Q  Why don't you know?
11 A  **I don't know what they know about computers and**
12    **how -- who their computer person is and what he**
13    **would have removed.  I don't know if --**
14 Q  I'd like to understand why the meta tags were
15    discovered prior to this case, but not in 2011 when
16    you were writing the letters.  Can you explain that?
17        MR. BRADENBURG:  I think it's been
18    asked and answered, but you may answer.
19 BY MR. JABE:
20 Q  I understand that in 2011 you didn't know what meta
21    tags were; is that right?
22 A  **(Shook head in an affirmative manner.)**
23 Q  You didn't think to look for them; is that right?
24 A  **Yes.**
25 Q  What was different in 2014 or 2015, I should say?

Page 49

1     What was different?
2        MR. BRADENBURG:  There's all kinds of
3     assumptions in that.
4 BY MR. JABE:
5 Q   How was it discovered in 2015?
6        MR. BRADENBURG:  If you can answer
7     that without discussions with counsel, you may do
8     so.  If your knowledge of how it was discovered
9     relies upon communications with counsel, I'd
10    instruct you not to answer.
11 BY MR. JABE:
12 Q  Did you have assistance of counsel in checking the
13    website?  Who -- who did that?  Who checked the
14    website in 2015 to make that determination of what
15    terms were there?
16        MR. BRADENBURG:  If you can answer
17    that based upon your own knowledge, you may do so.
18    If it involves communications with counsel, I'd
19    instruct you not to answer.
20        **THE WITNESS:  I can't answer without**
21    **counsel --**
22 BY MR. JABE:
23 Q  You can't tell me how it was discovered?
24        MR. BRADENBURG:  I'd instruct her not
25    to answer.  She just said it was based on

Page 50

1   communications with counsel.
2           MR. JABE:  Okay.
3           MR. BRADENBURG:  Let me interject
4   here.  We're in phase one, which is a very limited
5   area of discovery, that is discovery related to
6   contract interpretation, agreements from the 1996
7   and 2001 litigation settlement, and pleadings in the
8   2001 litigation and discovery related to when the
9   parties knew or should have known of the asserted
10  claims.  I'm not sure how your discovery is related
11  to those topics.
12          MR. JABE:  It is.
13          MR. BRADENBURG:  Okay.
14          MR. JABE:  Plus I'm almost finished,
15  but --
16          MR. BRADENBURG:  I've been giving you
17  some latitude, but I don't see it.  But if you're
18  almost finished, we'll carry through.
19  BY MR. JABE:
20  Q   Well, I would like to understand how or why the meta
21      tags were discovered in 2015 but not before.  I
22      understand part of that, I think, which is that you
23      weren't aware of them and didn't know what they were
24      in 2011.  Is that part correct?
25  A   Yes.

Page 51

1   Q   And then in 2015, others may have been involved,
2       counsel and others, it was discovered; is that
3       correct?  It wasn't just you in 2015?
4           MR. BRADENBURG:  You're asking a
5   factual question, it was discovered in 2014?
6           MR. JABE:  '14.  Okay.
7           MR. BRADENBURG:  So that's a "yes" or
8   "no" answer.
9   BY MR. JABE:
10  Q   I'm sorry, I don't know if I covered that.
11          When was the use of the meta tags
12      discovered?  Because I thought it was 2015, because
13      that's the first time Mr. Brandenburg mentioned it
14      to me.  So if it was before that, I'm interested to
15      know that.  When was that?
16          MR. BRADENBURG:  Hold on.  There's
17  attorneys all over at that point, so I'm trying to
18  figure out where we are.
19          What's the question right now?
20  BY MR. JABE:
21  Q   The question is:  When did Ziebart discover that the
22      word "Ziebart" was in meta tags on Z Tech's website?
23          MR. BRADENBURG:  I'm going to instruct
24  her not to answer to the extent it involves
25  communications with counsel.

Page 52

1           If you want to ask her when she found
2   out, that's a different question.
3   BY MR. JABE:
4   Q   When did you find out?
5   A   I don't know if it was 2014 or 2015.  Some time
6       between 2014 and 2015.
7   Q   You didn't personally discover it --
8   A   Correct.
9   Q   -- by searching on the website?
10  A   Correct.
11  Q   You had assistance of some kind?
12  A   Correct.
13  Q   Why did you have assistance then, but not in 2011?
14  A   Well, we did in 2011.  We had attorneys involved.
15  Q   So --
16  A   Maybe not initially when I sent the first letter,
17      but shortly thereafter.
18  Q   So even though you had the assistance of attorneys
19      involved in 2011, the meta tags were not discovered?
20          MR. BRADENBURG:  Hold on.  You can ask
21  her what her knowledge is.  You're asking more
22  generally when things occurred or how they occurred,
23  and there were attorneys all over in that time.  And
24  so I'm trying to let you get the information you're
25  entitled to, but I think you're asking, based on my

Page 53

1   knowing of the situation, things she got from
2   counsel.  Can you sharpen that a little bit or -- to
3   the extent you can answer that without referring to
4   counsel as -- you can answer that, but if it
5   involves the involvement of counsel, I'd instruct
6   you not to answer.
7           THE WITNESS:  Can you repeat the
8   question?
9           MR. JABE:  Sure.  What was the last
10  question pending?
11          (The indicated portion of the record
12  was read back as follows:
13          "Q   So even though you had the
14  assistance of attorneys involved in 2011, the meta
15  tags were not discovered?")
16          MR. BRADENBURG:  And that's assuming
17  some facts in (sic) evidence.
18          MR. JABE:  All of these are speaking
19  objections, you're aware of that.
20          MR. BRADENBURG:  No, it's assuming --
21  you're assuming they weren't discovered at that
22  time.
23          MR. JABE:  The word is "objection."
24          MR. BRADENBURG:  Yes.
25          MR. JABE:  And then you say "As to

Page 54

1  form."
2         MR. BRADENBURG:  Well, there's a
3  predication.  You're asking why they weren't
4  discovered there.
5         MR. JABE:  I appreciate --
6         MR. BRADENBURG:  The question is were
7  they discovered at that time or not; and then you
8  can ask why they weren't.
9         MR. JABE:  I think I tried that and it
10  got derailed --
11        MR. BRADENBURG:  I think it --
12        MR. JABE:  -- by a bunch of other
13  objections.
14        MR. BRADENBURG:  Yeah, and I think it
15  will get derailed this time too, but you're making
16  an assumption that has no predicate.
17        MR. JABE:  Let's take a break for a
18  minute.
19        (Off the record at 2:19 p.m.)
20        (Back on the record at 2:32 p.m.)
21        MR. JABE:  So, for the record, I do
22  not agree with Mr. Brandenburg's invocation of the
23  privilege in all of the circumstances where he has
24  done so.  But I think we can take that up at another
25  time if necessary.  I understand he's instructed the

Page 55

1  witness not to answer a number of questions because
2  of privilege concerns, which I appreciate, and
3  there's nothing I can actually do about that under
4  these circumstances.
5         So I will move on and I have only a
6  few questions remaining relating to the things we
7  were just discussing, and hopefully framed in a way
8  that doesn't come even close to implicating
9  privilege issues.
10  BY MR. JABE:
11  Q  In 2011, did anyone make an effort to determine
12     whether Z Tech was using Ziebart's name and meta
13     tags?
14        MR. BRADENBURG:  To the extent you can
15     answer that question based upon information not
16     provided by counsel, you may do so.  Otherwise I'm
17     instructing you not to answer.
18        **THE WITNESS:  I don't know.**
19  BY MR. JABE:
20  Q  In 2014, Ziebart did make an effort to determine
21     whether Z Tech was using Ziebart's name in meta
22     tags, right?
23        MR. BRADENBURG:  Again, to the extent
24     you can answer that question based upon your
25     knowledge, you may do so.  To the extent it is based

Page 56

1  upon communications with counsel, I'd instruct you
2  not to answer.
3         **THE WITNESS:  It's based on**
4  **discussions with counsel.  I can't answer.**
5         MR. BRADENBURG:  I'd instruct her not
6  to answer.
7         MR. JABE:  I have no further
8  questions.
9         MR. BRADENBURG:  I have no questions.
10        MR. HOOKER:  I have no questions.
11        (The deposition of Patricia Lipsky
12  concluded at or about the hour of 2:34 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 57

1              CERTIFICATE OF NOTARY
2     STATE OF MICHIGAN  )
                         ) SS
3     COUNTY OF GENESEE  )
4          I, Quentina Rochelle Snowden, a Notary
5     Public in and for the above county and state, do
6     hereby certify that the above deposition was
7     taken before me at the time and place
8     hereinbefore set forth; that the witness was by
9     me first duly sworn to testify to the truth, and
10    nothing but the truth; that the foregoing
11    questions asked and answers made by the witness
12    were duly recorded by me stenographically and
13    reduced to computer transcription; that this is a
14    true, full and correct transcript of my
15    stenographic notes so taken; and that I am not
16    related to, nor of counsel to either party nor
17    interested in the event of this cause.
18
19  Dated:  May 31, 2016
20
21              *Quentina Snowden*
                Quentina Rochelle Snowden
22              CSR-5519, Notary Public
                Genesee County, Michigan
23       My Commission expires:  1-04-18
24
25

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: 13..Bates

**1**

**13** 35:1,3

**14** 42:6,7,10 51:6

**15** 43:23,24

**1990s** 24:18

**1996** 39:7,9,15 50:6

**1998** 6:13

**19th** 35:15 44:11,22 45:8

**1:00** 5:3

**1:21** 16:10,11

**1:40** 29:9

**1:43** 29:10

**2**

**20** 33:23 34:10,17

**2001** 50:7,8

**2007** 6:18 12:17 15:3

**2009** 37:15

**2011** 18:7,12 23:18,20 35:15 42:18 44:22 45:8 46:16 48:15,20 50:24 52:13,14,19 53:14 55:11

**2012** 41:19 44:7

**2014** 20:10 21:8 24:1,14 27:15 29:13 34:16 48:25 51:5 52:5,6 55:20

**2015** 48:25 49:5,14 50:21 51:1,3,12 52:5,6

**2016** 5:1

**2019** 24:8

**25** 5:1

**272** 35:6,9

**274** 35:6,10

**280** 44:2

**281** 45:22

**282** 44:3

**2:19** 54:19

**2:32** 54:20

**2:34** 56:12

**3**

**30** 12:20 45:24

**5**

**5** 16:7 45:21

**50** 12:17,18,19

**7**

**7th** 42:18 44:11

**9**

**994** 42:11

**997** 42:11

**A**

**Abramson** 6:22

**academic** 6:6

**acknowledge** 45:1

**acquired** 24:5 25:5

**addition** 27:1

**admissions** 41:3

**advice** 11:7 13:23 14:2,7 32:7 42:23

**affirmative** 48:22

**afield** 40:21

**agency** 15:10

**agree** 54:22

**agreement** 41:19 44:7 45:21 46:2

**agreements** 50:6

**allegation** 36:21

**alleged** 43:3,7

**allegedly** 28:14

**allowed** 40:18

**amount** 15:7 16:6

**answers** 5:20 25:21

**anticipation** 30:5

**Appeal** 37:16 39:5,13

**appears** 38:9

**application** 33:6,8 34:15

**apply** 29:12 30:2

**applying** 33:13

**approximate** 6:15

**area** 50:5

**Asphalt** 20:23

**asserted** 50:9

**assistance** 49:12 52:11,13,18 53:14

**assistant** 6:8,9

**assume** 15:18

**assumes** 32:19

**assuming** 15:16 32:12 53:16,20,21

**assumption** 54:16

**assumptions** 49:3

**attention** 8:20,21 9:16 19:16,18 20:21 35:19

**attorney** 11:16 12:5 14:19 17:18 28:11,21 29:6,19 30:13,14 42:4 45:15

**attorney/client** 24:23 25:3 26:7 29:16 45:19

**attorneys** 7:4,8 8:4 9:4 10:21,22 11:8 15:10 17:4,7,9,16 22:23 26:11,18 27:9 28:25 32:13,14,15,22 46:12 51:17 52:14,18,23 53:14

**avoid** 25:23 27:6

**aware** 8:18,23 10:3 27:14 33:18,22 34:9,16 50:23 53:19

**awareness** 21:24 37:11

**B**

**back** 14:4,6 16:11 29:10 34:6,8 38:22, 24 39:23 40:9 45:14 47:20,22 53:12 54:20

**barrel** 21:11

**based** 34:2 49:17,25 52:25 55:15,24, 25 56:3

**basis** 36:21,23

**Bates** 35:6,7 42:11 44:2

**began** 12:10 14:20 16:13,22 17:24 22:8

**beginning** 7:9

**behalf** 12:24 15:11 41:4

**bit** 53:2

**Board** 37:16 39:6,14

**Bob** 25:11 47:13

**bottom** 35:8 41:6

**BRADENBURG** 10:19 15:15 17:3,17 18:5 22:14,21 24:7,20 25:6,9 26:9,17 27:23 28:6,16 29:2,14,20,24 30:4,17, 23 31:3,12 32:3,12,25 33:4,24 34:12, 18 35:3 39:8,20 40:2,13,20 41:9,12, 14,17,21 42:21 45:9 46:24 47:11,14, 18,25 48:17 49:2,6,16,24 50:3,13,16 51:4,7,16,23 52:20 53:16,20,24 54:2, 6,11,14 55:14,23 56:5,9

**Brandenburg** 51:13

**Brandenburg's** 54:22

**breached** 46:2

**break** 54:17

**Breskman** 35:14 42:17

**bring** 8:20 9:15

**brought** 19:16,18 20:21 24:19 35:18

**building** 7:12 8:18

**bunch** 54:12

**business** 21:1

---
C
---

**call** 7:20 9:4,17,25 10:1 11:20,22 12:2 13:5 33:18

**called** 5:5 6:8 18:25

**calls** 9:9 10:6

**capital** 6:23 36:7,8,11

**carry** 50:18

**case** 26:11 32:15 41:3,20,23 48:15

**cases** 32:14

**caused** 35:17 42:20

**cautious** 26:6

**cease** 10:14 11:10,15 12:3,7,10,22 13:2,12,15 14:13 19:4

**certificate** 6:7,8

**change** 47:8 48:6

**checked** 49:13

**checking** 49:12

**circumstances** 13:15,19,25 14:10, 12 21:2 54:23 55:4

**claimed** 38:14 39:1

**claiming** 12:12,22 14:21 46:1,6

**claims** 50:10

**clarify** 34:12

**client** 16:19 17:2 23:19 32:9,14,20,21 38:15 39:1,6,14 40:18

**client's** 39:19,25 40:11

**Clients** 32:8

**close** 38:1 55:8

**coaching** 25:20 26:4

**collection** 15:9,10,14,21 16:1

**communication** 29:16,21 30:5 32:10

**communications** 10:20 17:4 25:4 27:24 28:8,17 29:3 31:5 33:2 34:1,2, 20,21 40:3 45:15,19 49:9,18 50:1 51:25 56:1

**companies** 8:15

**company** 19:9 23:15 31:23

**Complaint** 46:23

**complies** 13:17

**comply** 14:13

**computer** 48:12

**computers** 48:11

**concerns** 55:2

**concluded** 56:12

**concluding** 38:3

**conclusion** 40:14

**conclusions** 40:25

**conduct** 8:10 9:5

**confirm** 22:17 26:12,18

**conjunction** 31:4

**connection** 31:22

**considerations** 11:9 13:24 14:8

**consultation** 10:25

**consulting** 11:16

**contact** 28:25

**contacted** 19:13

**context** 23:1 26:20 44:16,20

**continue** 27:2,3

**contract** 50:6

**control** 39:18,25 40:11

**cooperative** 12:1

**copyright** 7:14

**corners** 35:8

**corporation** 6:23 16:17 20:1

**correct** 13:3 35:12,15,23,24 36:1,9, 10,13,19 38:5 43:5,11 44:8,16,17,20, 21,24 46:19 50:24 51:3 52:8,10,12

**correctly** 35:9

**cost** 11:12

**counsel** 8:16 10:10,12,13 12:11,23 13:23 14:2,7 27:25 28:8,18 29:3,21 30:5,8,18,20,22 31:4,7 32:4,7,20 33:2 34:1,3,20,21 38:17,18 40:3 42:23 45:13 46:23,25 49:7,9,12,18,21 50:1 51:2,25 53:2,4,5 55:16 56:1,4

**courses** 7:17

**court** 5:17 35:4 41:2

**covered** 51:10

**current** 7:2

**customer** 21:4

**cutting** 25:13

---
D
---

**dash** 36:4,5

**date** 39:8

**dates** 6:15

**days** 45:24

**dealers** 23:8,16,25

**decide** 13:12 14:14

**decided** 11:13 33:10

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: deciding..guess

**deciding** 13:24 14:9

**decision** 10:24 11:10 14:16,17 30:2, 11,16,24 31:1,3,13,14,17,20,24 32:4, 9,21 37:20

**decision-making** 32:16

**decisions** 32:5,8,13,14

**degrees** 6:6

**department** 7:22,25 15:9

**deposition** 5:15 35:1 42:7 43:24 56:11

**derailed** 54:10,15

**desist** 10:14 11:11,15 12:3,7,11,22 13:3,12,16 14:13 19:4

**details** 17:20

**determination** 9:12,20 49:14

**determine** 8:10 9:10 12:6 16:14,22 17:25 19:9 55:11,20

**determined** 19:6

**difference** 15:16,19

**differently** 11:5 18:24 37:1

**directing** 30:21

**direction** 17:18

**directly** 15:8

**disclose** 17:15

**disclosure** 7:5

**discontinue** 15:24

**discover** 10:24 20:15,17 51:21 52:7

**discoverable** 17:19

**discovered** 48:15 49:5,8,23 50:21 51:2,5,12 52:19 53:15,21 54:4,7

**discovery** 50:5,8,10

**discussed** 22:17,18 23:5,21

**discussing** 55:7

**discussions** 17:5 22:6,10,12 23:3 31:6 32:17 38:17,18 46:25 49:7 56:4

**dispute** 23:1,7 38:10 44:10

**distinction** 11:2 17:11

**doctrine** 26:7

**document** 7:5 35:12 41:25 42:11,14 44:2,5 45:12

**draft** 46:11

**drafted** 46:12,23

**drums** 27:16

**duly** 5:6

---

**E**

**earlier** 13:1

**easily** 11:21

**edge** 26:21

**effect** 25:10

**effort** 55:11,20

**Ellis** 35:14 42:17

**employed** 19:14,15

**employee** 19:12,13,14

**end** 10:5

**engaging** 11:8

**entail** 7:2

**entitled** 17:5 52:25

**essentially** 38:3

**estimate** 12:14 14:24

**eventually** 25:4

**evidence** 53:17

**exact** 15:7 16:6

**EXAMINATION** 5:9

**examined** 5:8

**Excuse** 39:20

**Exhibit** 34:25 35:1 42:5,7,10 43:23,24

**expertise** 31:25

**explain** 48:16

**extent** 17:4,8 24:22 27:9,23 28:6 33:25 34:19 38:16 51:24 53:3 55:14, 23,25

---

**F**

**facility** 20:14

**fact** 9:10 37:24

**facts** 53:17

**factual** 33:9 42:1 51:5

**factual-based** 33:7

**fair** 13:9

**fall** 7:15

**familiar** 16:16

**Federated** 6:23

**feel** 27:4

**figure** 51:18

**file** 7:7,8 13:21,25 14:9,14

**filed** 14:21 15:4,6 33:5,8 34:16

**files** 8:8

**find** 30:24,25 52:4

**finished** 50:14,18

**form** 25:15 26:2 54:1

**formed** 23:21

**formula** 20:8,12 21:7,16 24:2,6,15,17 25:5 27:15 28:14 29:13 30:11 33:13

**found** 11:14 52:1

**frame** 22:22

**framed** 55:7

**franchise** 7:4,5 20:2

**franchisee** 15:25

**free** 27:5

**front** 25:24

**fully** 24:12

---

**G**

**G-u-a-r-d** 18:24 36:8

**generally** 52:22

**give** 5:19 14:24

**giving** 50:16

**Google** 19:7

**Group** 24:17

**Guard** 18:11,19,22 35:22 36:7,15 44:19,20 45:23

**guess** 7:16,20 8:22 45:5

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: handed..lawsuit

### H

**handed**  42:10

**handing**  43:22

**handle**  7:4 11:21

**happen**  7:10

**happened**  29:1 47:1

**happening**  21:9

**happy**  6:2

**hard**  25:23

**head**  48:22

**heard**  21:15,18

**hearsay**  24:8,9,10

**held**  6:14,15,18,19

**hesitant**  33:1

**hesitate**  6:1

**hires**  15:10

**hold**  6:6 10:19 51:16 52:20

**home**  35:20

**HOOKER**  26:2 27:8 31:19,24 32:19
  56:10

**hour**  56:12

### I

**identification**  35:2 42:8 43:25

**identifies**  9:2 46:14

**identify**  12:6 13:2,10 43:3

**identity**  10:7

**immediately**  26:12,19

**impacting**  45:15,18

**implicating**  55:8

**important**  5:18

**in-house**  32:20

**inclined**  41:2

**include**  10:12

**independent**  17:9

**Indiana**  20:14,24 21:1,13 27:17

**ineffective**  11:14

**infers**  45:5

**inform**  27:21

**information**  9:6 18:12,17 19:3 27:7
  52:24 55:15

**infringement**  9:3 12:12,23 13:2,5,8,
  10 14:22 15:13,17

**infringements**  12:6

**infringer**  9:18

**infringer's**  9:22

**infringing**  10:1,15 35:21 36:14,22
  44:24 45:4,7

**initial**  24:21,25 26:14

**initially**  24:19 52:16

**initiate**  15:22

**innocent**  11:25

**inquiries**  9:5,8 10:9 37:3

**instances**  20:3,7 22:2 23:4

**instruct**  28:5,19 29:4,14,17,21 30:6
  33:25 34:18 42:24 45:17 49:10,19,24
  51:23 53:5 56:1,5

**instructed**  54:25

**instructing**  17:14 29:24 55:17

**instructions**  17:6

**interested**  51:14

**interject**  22:14 42:21 50:3

**International**  20:1

**Internet**  11:18,19,23,24 13:7

**interpretation**  50:6

**invading**  26:6

**investigation**  8:12 16:21 17:18

**investigations**  8:10 16:13 17:15,21,
  22,24

**invocation**  54:22

**involve**  38:18

**involved**  15:5 17:16 26:11,18 27:9
  30:24 31:5,6 32:15 51:1 52:14,19
  53:14

**involvement**  53:5

**involves**  17:4 31:4,25 34:1,19 40:3
  49:18 51:24 53:5

**involving**  30:8,18 34:2

**issue**  7:12 18:9 24:1 31:19 40:21,23
  41:19,23

**issues**  7:4,18 23:20 25:20,22,24,25
  26:23 27:4 41:2 55:9

### J

**Jabe**  5:10 11:4 14:3,11 15:18,20 16:8,
  12 17:14,23 18:8 22:20,25 24:11,13
  25:2,7,11 26:9,16,22 27:11,12 28:1,
  12,22 29:7,11 30:1,9,19 31:2,10,15,21
  32:1,7,23 33:3,11 34:6,14,24 35:5
  38:16,21 39:4,9,12 40:15,17,20 41:7,
  11,13,16,18 42:5,9 43:2,22 44:1 45:20
  47:2,13,15,22 48:3,19 49:4,11,22
  50:2,12,14,19 51:6,9,20 52:3 53:9,18,
  23,25 54:5,9,12,17,21 55:10,19 56:7

**job**  19:20

**joint**  32:4

**Jr**  20:20

**judgment**  11:20 12:2

**July**  27:20 42:18 44:11

### K

**kind**  7:12 8:5,22 52:11

**kinds**  45:10,15 49:2

**knew**  23:6 37:8 50:9

**knowing**  53:1

**knowledge**  25:10 26:10 38:14,25
  49:8,17 52:21 55:25

### L

**L-i-p-s-k-y**  5:14

**label**  27:16

**Lacks**  25:10

**latitude**  25:13 50:17

**law**  6:22 7:21

**lawsuit**  13:21,25 14:9,14 23:12 41:10,
  15 46:1,11

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: lawsuits..personal

**lawsuits** 14:21 15:1,4

**lawyers** 35:7

**leads** 41:18

**leaning** 25:1

**learn** 20:9,11 25:4

**learned** 18:3 20:4 21:8,9 22:2 24:14

**learning** 18:17 19:3

**legal** 6:7,8,9 7:3,10,15,25 31:20,22,25 40:14,24 41:3 42:2 45:10,12

**length** 25:19

**letter** 10:5,14 11:11,15 12:8 13:3 19:4 33:16 35:14,17 36:18 37:2,13,16 41:7, 9,16,22,24,25 42:17,20 43:3 44:22 45:1,8 47:1 52:16

**letters** 12:3,11,22 13:13,16 14:13 44:11 46:16 47:9 48:7,16

**License** 6:17

**limit** 22:22

**limited** 50:4

**Lipsky** 5:4,12 31:18 56:11

**litigation** 6:9 7:14 22:15,16,19 30:6 40:23 41:25 42:4 50:7,8

**location** 9:11,22

**looked** 37:5

**lot** 11:24 12:15 16:1,3

---

M

**made** 30:2,10 31:1,2,4,13,16 32:9 41:4

**make** 9:9,11,17,20 10:6,9,24 11:20,22 12:1 21:6 32:8,13,14,20 37:2 49:14 55:11,20

**making** 11:10 25:12 26:5 30:15 33:18 54:15

**manager** 6:17

**manner** 48:22

**mark** 10:2 44:15,19

**marked** 35:1 42:7 43:24

**matter** 7:3,10 19:24 31:7 41:24

**mentioned** 8:16 23:17 24:2 47:8 48:7 51:13

**meta** 46:3,7,10,13,17 48:14,20 50:20 51:11,22 52:19 53:14 55:12,21

**Michigan** 5:2

**middle** 44:14

**Mike** 19:12,20 35:18

**mind** 11:9,12 25:13

**mindful** 27:4

**minute** 16:9 29:8 54:18

**mistaken** 45:8

**moment** 26:14

**money** 15:25 16:2

**monitor** 8:4

**monitoring** 8:14,15,22

**month** 27:19

**move** 55:5

---

N

**names** 8:14 18:18 30:25 35:19,22 36:19 37:4,9,12 44:23 45:2

**necessarily** 13:8

**negotiated** 45:13

**nod** 5:21

**non-attorney** 40:25 41:4

**non-attorneys** 10:25

**note** 47:16

**notice** 33:14

**notify** 28:2,5,13

**number** 42:10 55:1

**numbers** 35:8

---

O

**Oakland** 6:11

**object** 15:15 24:10,22 25:15 26:2 27:5 40:13 47:16

**objected** 43:18 46:17

**objecting** 25:19 43:5

**objection** 24:7,12,20 25:6,12,16 30:17 33:24 38:16 39:7,15 40:2,15

45:9 47:11,16,17 53:23

**objections** 25:15,24 26:4,24 53:19 54:13

**obtain** 6:10

**occur** 43:7

**occurred** 32:6 45:16 52:22

**Office** 7:19 33:14 37:6

**Offices** 6:22

**opinion** 37:15,19 38:2

**opinions** 42:3

**outstanding** 15:23

**overview** 7:21

**owe** 15:25 16:2

**owned** 44:23

**owner** 44:15,19

**owns** 36:18

---

P

**p.m.** 5:3 16:10,11 29:9,10 54:19,20 56:12

**pages** 35:8

**paragraph** 38:2 44:18

**paragraphs** 44:14

**paralegal** 6:7

**part** 7:23 22:15 23:22 27:2 30:4,20 32:21 50:22,24

**parties** 10:10,12 50:9

**parts** 47:7,8 48:5,6

**party** 38:4

**party's** 39:19,25 40:11

**past** 12:21 23:4 24:21

**Patricia** 5:4,12 56:11

**pending** 53:10

**people** 8:17 23:3,8

**period** 11:12 25:1 45:16

**person** 7:24 10:1 11:13,22 13:16 14:12 30:15,21 48:12

**personal** 25:10

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES                                     Job 2807
Patricia Libsky                                                      Index: personally..royalties

**personally** 18:15 20:15 21:17,18
 52:7

**phase** 50:4

**phone** 9:9,17 11:22 33:18

**phrase** 22:23

**pick** 5:20

**picture** 11:18,23

**pictures** 13:6

**Pino** 19:12 35:18

**Pino's** 19:20

**place** 21:13

**places** 6:25 43:8

**pleadings** 50:7

**point** 51:17

**portion** 14:5 34:7 38:9,23 39:22 40:8
 53:11

**portions** 43:10,17

**position** 6:18,19 7:2 38:10

**positions** 6:14,16

**possibly** 13:10

**potential** 9:17,22

**predicate** 54:16

**predication** 54:3

**preface** 27:10

**president** 19:22,23,25

**preventing** 41:15

**primarily** 20:2

**prior** 18:12 21:21 22:8 23:12 37:12
 48:15

**privilege** 25:22 26:7,8,22 27:1,4,6
 31:15 32:24 54:23 55:2,9

**privileged** 32:10

**privileges** 24:23

**problem** 26:23

**problems** 43:14

**process** 31:6 32:16

**product** 17:19 24:5 25:5 26:7

**product-related** 33:10

**Products** 24:17

**protect** 31:16

**protects** 8:1

**provide** 12:14 32:7

**provided** 55:16

**providing** 47:24

**purchased** 24:16

**Pure** 20:23

**purview** 7:15 32:6

### Q

**question** 6:3 11:5 14:1 15:16 16:21
 24:14,24 25:16 26:3 27:13 28:7,17
 30:10 31:16 34:5 38:21 39:11 40:7
 47:23 48:4 51:5,19,21 52:2 53:8,10
 54:6 55:15,24

**questions** 5:20,24,25 17:10 27:6,10
 42:1 45:10 55:1,6 56:8,9,10

**quote** 37:19 43:10

**quoted** 38:9

**quoting** 43:13

### R

**read** 14:3,6 34:6,8 35:9 38:21,24
 39:23 40:9 53:12

**reason** 30:7

**reasonable** 47:10 48:8

**recall** 18:10 19:1 20:3,7 21:3 22:2
 27:19

**receive** 11:7

**received** 9:7 14:12

**record** 5:11,21 14:5 16:9,10,11 29:7,
 9,10 34:7 38:23 39:22 40:8 47:25
 53:11 54:19,20,21

**recording** 5:17

**refer** 35:7

**reference** 28:17 29:15 34:21 37:15

**referring** 10:20 27:24 28:7 34:13
 42:22 53:3

**refrain** 25:19

**registered** 37:7

**registering** 7:5

**registration** 7:6 29:12 30:3,11 31:17
 33:13 34:15

**relate** 41:10

**related** 50:5,8,10

**relates** 44:10

**relating** 7:17 55:6

**relationship** 40:24

**relevance** 40:21 41:1

**relevant** 42:3

**relies** 49:9

**remaining** 55:6

**remember** 18:22 21:11 43:1

**remove** 10:4 45:22

**removed** 46:6 48:13

**repeat** 14:1 34:4 39:11,21 40:7 53:7

**repeatedly** 22:19

**rephrase** 6:2

**reported** 27:16

**Reporter** 5:17 35:4

**requests** 13:17

**requires** 38:17

**respect** 24:2 25:13,22,25 27:5

**responsibilities** 19:20

**restate** 48:4

**restrict** 41:2

**result** 5:19 9:6 17:6

**reveal** 27:6

**revealing** 10:6 25:3

**Reviewing** 42:25

**rights** 38:5

**rough** 12:14 14:24

**roughly** 12:21

**royalties** 15:23

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: S-h-i-e-l-d..trademarks

---

**S**

**S-h-i-e-l-d** 35:25

**salesman** 20:2

**searches** 19:7

**searching** 52:9

**Section** 45:21

**seek** 30:11 31:17,20

**sees** 8:17,19 11:17

**selling** 20:2

**seminar** 7:20

**send** 10:5,14,18 11:10,13 12:4 13:2,
 12,15,16

**sending** 12:7

**senior** 19:22,23,25

**serial** 35:7

**service** 8:7

**Setting** 11:7

**settlement** 41:19 44:7 45:21 50:7

**sharpen** 53:2

**Shield** 18:11,19 19:1 35:22,25 36:15
 37:23 44:16 45:23

**shook** 48:22

**shorter** 26:1

**shortly** 52:17

**shot** 13:6

**show** 34:25 37:22 43:13

**sic** 24:9 53:17

**sign** 16:3 33:6

**signature** 35:12 42:14

**signing** 37:13

**situation** 53:1

**slightly** 36:25

**sounding** 36:25

**Southfield** 5:2

**space** 18:22 35:25 36:8

**speak** 5:19

**speaking** 24:11 25:12,19 26:4 47:16
 53:18

**specialist** 6:9

**specific** 43:3,16

**specifically** 47:9 48:7

**spell** 5:13 18:20

**spelled** 18:21,22,23,24 19:1 35:25
 36:2,25 37:25

**stamped** 35:6 42:11 44:2

**stamping** 35:7

**start** 47:22

**started** 22:10,11,13 47:19,23 48:1

**state** 5:11

**states** 7:6 45:22

**step** 17:22

**steps** 8:1

**stick** 47:3

**sticker** 21:10

**stickers** 20:13

**subject** 19:24 31:7 41:24 44:11

**substance** 30:25 31:9,11

**substantive** 31:13,14

**sue** 15:10 41:22

**suggest** 45:14

**suggesting** 18:13

**suit** 15:21

**suits** 15:13,14

**supposed** 47:8 48:6

**sworn** 5:6

---

**T**

**tag** 46:10,13

**tags** 46:3,7,17 48:14,21 50:21 51:11,
 22 52:19 53:15 55:13,22

**taking** 38:10

**talked** 22:22 28:10 29:6

**talking** 15:13 23:9 24:22 26:25 27:2
 28:21 29:6 47:19,22 48:1

**team** 22:15

**Tech** 16:14,23,24 18:3,13 20:4 21:15
 22:3,7,12 23:3,7,16,25 24:15,16 25:5
 27:14 28:2,5,13,23,25 33:12,22 34:10,
 16 35:15,21 36:2,7,14,21 37:3,9 38:3,
 11,15 39:1,2,6,14,15 40:19,22 41:15,
 23 42:18 43:13,16 44:8,23 45:1,22
 46:2,6,16 47:7,10 48:5,8 55:12,21

**Tech's** 19:17 20:11 42:10 43:4,17,22
 46:17 51:22

**Technologies** 16:17,24 17:2 18:1,21
 23:10,13,21 27:21 35:20 44:15,19

**Techs** 17:1

**terminated** 15:24

**terms** 49:15

**testified** 5:8 13:1

**testify** 5:6 33:2

**testimony** 25:9

**things** 13:9 27:1 33:5,7 52:22 53:1
 55:6

**Thisdocument** 35:6

**Thomas** 20:20

**thought** 23:9,16,25 26:24 37:21 47:7,
 12 48:5 51:12

**time** 11:13 18:3 19:14,15,21 21:8
 22:8,22 23:20 24:1,21 25:14 26:13
 27:22 28:3 33:22 34:10,13 36:2 38:20
 40:7 45:14,16 47:1 51:13 52:5,23
 53:22 54:7,15,25

**times** 11:24 16:1,3,4

**title** 6:17,18

**told** 23:14,23 28:23 32:4 46:16

**Tom** 8:20 14:18 31:18

**topic** 27:13

**topics** 26:25 50:11

**trademark** 6:17 7:7,8,14,17,19,21
 8:8,24,25 9:1,2,7,11 12:12,23 13:2,5,
 8,10 14:21 15:13,17 16:1 18:9,25
 29:12 30:3,11 31:17 33:13,14 34:15
 37:5,6,7,15 38:4 39:5,13 43:4,7

**trademark-related** 6:24

**trademarks** 8:1,7,11,19 10:16 16:15,
 23 18:1,4,14 20:5 22:4,8,12 23:4
 28:15,24 35:22 36:15,22 38:12

ZIEBART INTERNATIONAL -vs- Z TECHNOLOGIES
Patricia Libsky

Job 2807
Index: Trial..Ziebart's

**Trial** 37:16 39:5,13

**truth** 5:7,8

**turn** 15:9

**type** 17:22

**types** 11:8

---

**U**

**U.S.** 37:5

**unclear** 5:25

**uncomfortable** 26:15,21

**understand** 5:22 6:3 7:13 11:2 16:19 17:11 21:6 23:15,24 24:12 26:16 38:2 41:5,8 47:15 48:14,20 50:20,22 54:25

**understanding** 21:7 24:3,16 38:5,12

**understood** 24:4 38:7

**undertook** 17:17

**unique** 37:24

**University** 6:11

**usage** 9:7

---

**V**

**verbal** 5:19

**version** 36:11

**vice** 19:22,23,25

**videos** 13:6

**violated** 38:11

**violating** 18:1,13 26:6 28:24 38:1,4

**violation** 28:15

**violations** 43:4,7

**visit** 9:11,22,24

**voluntarily** 15:24

---

**W**

**watch** 8:7,9

**watches** 8:7

**website** 19:18 35:20 37:6 43:4,8,10, 14,17 45:23 46:3,7,15 47:7 48:6 49:13,14 51:22 52:9

**Wednesday** 5:1

**whatsoever** 26:23

**Wolfe** 14:18 20:20 31:18

**Wolfe's** 8:21

**Wolpoff** 6:22

**word** 51:22 53:23

**words** 10:22

**work** 6:21,24 7:3,6,7,23 8:4 17:19 26:7 33:10

**working** 12:10 14:20 16:14,22 17:25 22:8,10,11 23:2

**worrisome** 42:4

**worth** 12:7

**write** 33:16 35:17 42:20

**writing** 48:16

**wrote** 47:1

---

**Y**

**year** 12:21 15:1 27:19

**years** 33:23 34:11,17 37:12

---

**Z**

**Z-e-e-g-a-r-d** 36:11

**Z-gard** 18:25

**Z-liner** 37:23

**ZIE** 35:6 42:11 44:2 45:21

**Ziebart** 6:15,19,21 7:2,22 8:1,3,10 9:5,9 12:10,11 13:1,24 14:8,20,21 15:6,21,25 16:3,13,21 17:25 18:10,19 19:3,13 20:1,17 21:4 22:7 23:2,13,22 24:6 28:13,23 29:12 30:3,10,15,21 33:12 36:3,18,22 37:8 38:9,14,25 39:5,7,13,16,18,24 40:10 41:4 43:5,17 44:7,23 45:23 46:1,6,17 51:21,22 55:20

**Ziebart's** 10:15 12:24 18:1,4,14 19:17 20:4 22:3,7 23:3 24:17 28:15 35:21 36:11,14 38:4,11 46:2,3,7 55:12,21