## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Ziebart International Corp.,

                    Plaintiff,              Case No. 15-cv-11745

v.                                          Judith E. Levy
                                            United States District Judge
Z Technologies Corp.,
                                            Mag. Judge Anthony P. Patti
                    Defendant,

v.

Pure Asphalt Co.,

                    Counter Defendant.

_____/

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT [55], GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIMS [57], AND GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [58]

Before the Court are defendant Z Technologies Corp.'s motion for summary judgment, plaintiff Ziebart International Corp. and counter defendant Pure Asphalt Co.'s motion for partial summary judgment on defendant's counterclaims, and Pure Asphalt Co.'s motion for judgment on the pleadings on counterclaims III and IV.  (Dkts. 55, 57, 58.)  For

the reasons set forth below, the Court will deny defendant's motion for summary judgment, will grant in part and deny in part plaintiff and counter defendant's motion for partial summary judgment, and grant counter defendant's motion for judgment on the pleadings on counterclaims III and IV.

## I.   Background

Plaintiff and defendant began their commercial relationship in 1996, and their relationship continued for fifteen years, ending in 2003. Their commercial disputes began in 2000, and have been ongoing for more than fifteen years, continuing to this day.  This lawsuit represents the latest in a series of trademark and contract disputes between the parties.

Plaintiff is a Michigan corporation that sells appearance and protection goods and services, including rustproofing products, for auto vehicles.  (Dkt. 1 at 3–4.)  Defendant is a Delaware corporation that manufactures and sells industrial undercoating and paint products for vehicles, also including rust prevention products.  (Dkt. 52 at 2.)  Pure Asphalt Co. is an Illinois corporation and began supplying plaintiff with a sealant known as Formula Q in 1999.  (Dkt. 58 at 12.)

2

In 1996, plaintiff sold its chemical subsidiary, Ziebart Products Group, Inc. to The Sentry Corporation, which then became known as Z Tech.  (Dkt. 1 at 6; Dkt. 56-2 at 8.)  As part of the sale, the parties entered into the following agreements that addressed, among other things, use of trade names, trademarks, disclosure of information, and other intellectual property: Asset Purchase Agreement; License Agreement; Non-Competition and Non-Disclosure Agreement; and Supply Agreement.  (Dkt. 1 at 4–6; Dkt. 52 at 19–23; Dkt. 66-10 at 2.)

In the 1996 Asset Purchase Agreement, the parties agreed that defendant Z Technologies Corp. could use the name "'ZP Corporation' and variants thereof," and that plaintiff would no longer use this name or similar names.  (Dkt. 56-2 at 41.)  Pursuant to the License Agreement, defendant was permitted to license and use specified trademarks, service marks, and trade names owned by plaintiff.  (Dkt. 56-4 at 3–4.)  The list of licensed marks and names was never attached to the Agreement, and the parties have not identified which marks and names were included in the License Agreement.  The parties also entered into the Non-Competition and Non-Disclosure Agreement (NDA), which stated that "all confidential information shall be and

3

remain the sole and absolute property" of defendant, and prohibited plaintiff from disclosing defendant's confidential and proprietary information without written consent.  (Dkt. 56-5 at 4.)

Finally, the parties entered into an ongoing commercial relationship through a Supply Agreement.  Pursuant to this agreement, plaintiff agreed to purchase at least 650,000 gallons per year of automotive sealants, cleaners, and coatings—including "Ziebart Formula Q"—from defendant.  (Dkt. 56-6 at 3.)  If defendant were unable to provide this product for a period of time, Article 12 permitted plaintiff to cover by finding an alternate supplier for that time.  (*Id.* at 7–8.)  If plaintiff needed to cover, Article 15 stated that plaintiff could disclose otherwise confidential Ziebart Product Formula information to the alternate supplier to ensure it received the appropriate products.  (*Id.* at 9.)  The right to disclose confidential information under this circumstance was the only exception to plaintiff's duty not to disclose contained in Article 15 of the Supply Agreement and in the Non-Competition and Non-Disclosure Agreement.  The Supply Agreement was to last for five years, at which point plaintiff could renew the contract for another five years "on the same terms and conditions" by

4

giving written notice to defendant at least 180 days before the Agreement expired.  (*Id*. at 4.)

Approximately four years after the parties entered into these agreements, the parties "had a falling out." (Dkt. 56 at 14.)  Plaintiff stopped purchasing products from defendant and terminated the Supply Agreement in approximately March 2000 (*see* Dkt. 56-9 at 2).  Plaintiff then sent defendant a letter on June 14, 2000, alleging defendant was infringing plaintiff's trademarks and stating "Z Tech is not authorized to use the Ziebart Trademarks." (*Id*.)  On June 14, 2000, defendant denied the allegations, and requested plaintiff purchase the remaining inventory defendant had prepared specifically for plaintiff.  (Dkt. 56-10 at 2.)  On August 31, 2000, plaintiff again wrote to defendant, asking defendant to cease and desist from continuing to ship products to plaintiff's franchises, and offering to discuss the remaining inventory. (Dkt. 56-11 at 2.)  Two months later, on October 24, 2000, plaintiff again wrote to defendant, ordering it to cease and desist using plaintiff's trademarks.  (Dkt. 56-12.)

In January 2001, defendant sued plaintiff in state court for breach of contract, arguing plaintiff had failed to pay defendant and wrongfully

5

terminated the Supply Agreement.   (*See* Dkt. 56-13.)   Plaintiff counterclaimed for breach of the Asset Purchase Agreement, Supply Agreement, and License Agreement.   (Dkt. 56-13 at 12–15.)   In September 2001, the parties settled the lawsuit and submitted a stipulated dismissal with prejudice.   (Dkt. 56-14.)   Additionally, the parties entered into a Settlement and Release Agreement by which they agreed to mutually release each other from current and future claims "in connection with any counterclaim brought against Z Tech" and "in connection with any claim brought against Ziebart" in the 2000 litigation.  (Dkt. 56-7 at 3.)

After this dispute, the parties executed an Amended Supply Agreement on September 18, 2001.  (Dkt. 1 at 6.)  Pursuant to this agreement, the contract would be valid until September 17, 2007, and plaintiff could renew the contract for five years "upon written notice to Z Tech not later than one hundred eighty (180) days prior to the expiration of the initial terms of this Agreement."  (Dkt. 56-7 at 7.)

Despite their attempts to continue their business relationship, the parties' disagreements persisted.  Their commercial relationship broke

6

down in 2003. (Dkt. 1 at 6; Dkt. 52 at 25.)[1] And following this breakdown, plaintiff continued to accuse defendant of infringing its trademarks. In 2003, plaintiff's chief operating officer was informed by one of its techicians that defendant may be using plaintiff's Formula Q trademark on its products. (Dkt. 56 at 15.) In 2006, plaintiff complained to defendant about several warranty forms that stated defendant was the "Originators of Ziebart Protective Coatings." (*Id*.) In 2007, Pure Asphalt notified plaintiff that defendant Z Technologies Corp. was using the Ziebart name on its website. (*Id*. at 16.)

In 2011, plaintiff learned defendant was potentially infringing several other trademarks on defendant's website. (Dkt. 56 at 16; Dkt. 56-16 at 7.) Plaintiff's trademark counsel, Patricia Lipsky, contacted defendant, and the parties settled the dispute by entering into the Settlement Agreement of February 2012. (Dkt. 56 at 16–17; Dkt. 1-8.) Pursuant to this agreement, defendant was prohibited from using the Z-Shield, Zeegard, and Z Guard names on its website, and plaintiff agreed

---

[1] Defendant amended its initial answer (Dkt. 9) in a later filing. (Dkt. 52.) The counterclaims were not amended in the later filing, and defendant did not resubmit the exhibits attached to Dkt. 9. The Court will reference exhibits from defendant's answer as numbered in Dkt. 9.

to allow defendant to use the Z Shield and Z Guard marks in certain fields. (Dkt. 1-8.)

Subsequently, in 2015, plaintiff learned defendant was using the name Ziebart in the meta tags[2] in connection with its website despite the 2012 Settlement Agreement. Around this same time, plaintiff registered the Formula Q trademark with the U.S. Patent and Trademark Office. Plaintiff then allegedly learned defendant was infringing the Formula Q trademark and filed this lawsuit. (*See* Dkt. 1.) Plaintiff's claims are as follows: (I) trademark infringement pursuant to 15 U.S.C. § 1114; (II) common law trademark infringement; (III) false designation of origin or sponsorship, false advertising or trademark infringement pursuant to 15 U.S.C. § 1125(a); and (IV) breach of the 2012 Settlement Agreement. (*Id.* at 8–13.)

Defendant has brought five counterclaims against plaintiff and Pure Asphalt Co. First, defendant alleges that plaintiff breached the Asset Purchase Agreement and NDA by registering the Formula Q trademark with the U.S. Patent & Trademark Office, "by disclosing to third parties . . . the formula for Formula Q and other formulas, when it

---

[2] Meta tags are words or phrases describing a web page's content and appear in the page's code, but do not appear on the page itself. The tags can be read by search engines so the web page will appear in search results.

was not permitted to do so," "by claiming Z Tech does not have the right to use the name 'Formula Q and . . . bringing legal action against Z Tech for its alleged infringement of the purported 'Formula Q' trademark." (Dkt. 52 at 31–32.)   Second, defendant argues that, through this same conduct, plaintiff misappropriated its trade secrets "relating to Formula Q and other formulas." (*Id*. at 33.)   Third, defendant claims Pure Asphalt Co. misappropriated the same trade secrets by continuing to use these formulas despite knowing it has no legal right to do so. (*Id*. at 34–35.)   Fourth, defendant requests a declaratory judgment "of the rights and legal relations [of the parties] pertaining to Z Tech's formulas and other trade secrets and confidential and proprietary information." (*Id*. at 36.)   Finally, defendant seeks cancellation of plaintiff's registration of the Formula Q trademark, arguing the registration is invalid as ownership rights were transferred to defendant in the 1996 Asset Purchase Agreement. (*Id*. at 36–37.)

## II.   Legal Standard

Before the Court are motions for summary judgment and a motion for judgment on the pleadings.

9

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

Judgment on the pleadings is appropriate "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Coyer v. HSBC Mort. Servs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Thus, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless

10

clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, the allegations "need to be sufficient to give notice to the defendant as to what claims are alleged," and they must state a plausible claim for relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   Analysis

### A.   *Defendant's Motion for Summary Judgment*

Defendant seeks to dismiss all of plaintiff's claims. First, defendant argues plaintiff cannot bring Counts I, II, or III because (1) they are time barred by the statute of limitations and laches, and/or (2) they are barred by the 2001 lawsuit and the doctrine of res judicata. (Dkt. 56 at 11–18.) Second, defendant argues that Counts I, III, and IV are barred under the doctrine of equitable estoppel and the Asset Purchase Agreement. (*Id*. at 19–21.)

Defendant is also seeking summary judgment on four issues related to its counterclaims: (1) the NDA is still in effect; (2) plaintiff's right to cover under the Amended Supply Agreement does not extend "forever"; (3) plaintiff is barred from arguing that its disclosure of defendant's formula to Pure Asphalt Co. destroyed defendant's rights;

11

and (4) plaintiff is barred from making new disclosures of defendant's formulas.  (Dkt. 56 at 29–33.)

### i.    Counts I-III Are Not Time Barred

Defendant claims Counts I, II, and III—plaintiff's trademark infringement claims under the Lanham Act and common law—are time barred.  (Dkt. 56 at 19–22.)

There is no express statute of limitations for common law trademark infringement claims, but the Sixth Circuit has held that Michigan's three-year statute of limitations for property damage applies to common law trademark infringement claims.  *See, e.g.*, *Nartron Corp. v. STMicroelectrionics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).

The Lanham Act also does not include an express statute of limitations.  Instead, courts use the doctrine of laches to determine if a claim is barred.  *Audi AG v. D'Amato*, 469 F.3d 534, 545 (6th Cir. 2006).  Under this doctrine, a court looks at "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay."  *Id*. at 545–46.  In the Sixth Circuit, "there is a strong

12

presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed." *Nartron Corp.*, 305 F.3d at 408.  In this case, assuming that Michigan law is the pertinent law, the statute of limitations is three years.  "In other words, a delay beyond the three-year statutory period is presumptively prejudicial and unreasonable.  The period of delay begins to run when plaintiff had 'actual or constructive knowledge of the alleged infringing activity.'"  *Id*.  To rebut this presumption of laches, a plaintiff must "(1) rebut the presumption of prejudice; (2) establish that there was a good excuse for its delay; or (3) show that the defendant engaged in 'particularly egregious conduct which would change the equities significantly in plaintiff's favor.'"  *Id*. at 409.

In this case, plaintiff's claims are not time barred.  First, although the parties agree that plaintiff knew defendant was allegedly infringing the Ziebart and Formula Q trademarks in 2000 (*see* Dkt. 56-9 (letter from plaintiff to defendant)), plaintiff believed defendant stopped using the trademarks in 2000, prior to the 2001 lawsuit being filed.  (Dkt. 66 at 10.)  Plaintiff learned of one other potential instance of infringement in 2003 regarding the unauthorized use of Formula Q and defendant

13

again allegedly agreed not to infringe.  (*Id.* at 14–15.)  Plaintiff asserts that it had no reason to know that defendant would infringe again, and that it timely raised this issue when it first learned of additional infringements in 2015.  (*Id.* at 10–11.)

Defendant has not demonstrated plaintiff should have suspected other infringements of the Ziebart and Formula Q trademarks prior to 2015.  Between 2005 and 2012, plaintiff contacted defendant about various trademark issues, but not the Ziebart or Formula Q trademarks.  Defendant therefore cannot rely on these instances to demonstrate that plaintiff should have filed suit regarding Formula Q at an earlier date.

Moreover, plaintiff has alleged violations of seven specific trademarks (including Formula Q). (Dkts. 1-1–1-8.)  The documentation provided by defendant does not indicate the trademarks listed in the complaint are the same as those that plaintiff previously disputed with defendant either prior to the 2001 lawsuit or in the parties' subsequent letters of communication.  The 2012 Settlement Agreement lists specific trademarks that may and may not be used, and the registration numbers do not match those listed in the complaint.  The only reference

14

to "Ziebart" is in a provision requiring defendant to remove references to the name from its website (*see* Dkt. 1-9 at 3), but no specific trademark is identified by name or number.  Thus, defendant cannot rely on this agreement to argue plaintiff is time barred from raising its current claims.

Construing the evidence in the light most favorable to plaintiff, plaintiff is not barred by the three-year statute of limitations and plaintiff did not unreasonably delay in bringing its Lanham Act and common law infringement claims.   Accordingly, defendant is not entitled to summary judgment on Counts I-III on the ground that they are time barred.

### ii.     Counts I-III Are Not Barred by Res Judicata

Defendant claims Counts I, II, and III of the complaint are barred by res judicata and the 2001 settlement agreement between the parties. (Dkt. 56 at 22–26.)  The 2001 settlement agreement between the parties contains a mutual release clause, which prohibits both parties from suing for any claims "whether now known or unknown, suspected or unsuspected" and that each party "now has, owns, or holds . . . or at any time heretofore ever had, owned or held . . . in connection with any

[claim or counterclaim]" brought by the parties in that litigation.  (Dkt. 56-7 at 3.)

This Court is required to apply the Michigan doctrine of res judicata in this case.  "Michigan takes a broad approach to the doctrine," and "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Smith v. City of Inkster*, 644 F. App'x 602, 607 (6th Cir. 2016).  Thus, the doctrine "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised." *Id.*  However, this does not necessarily bar "all claims that accrue before entry of a final award." *Id.* (citing *McCoy v. Michigan*, 369 F. App'x 646, 651 (6th Cir. 2010); *Banks v. LAB Lansing Body Assembly*, 271 Mich. App. 227, 231–32 (2006)).

With respect to defendant's res judicata argument, the parties dispute only whether the trademark claims could or should have been brought as part of the 2001 litigation.  Here, the third prong is not satisfied and the 2001 settlement agreement does not bar plaintiff's

16

claims.   As set forth above, although plaintiff knew defendant was allegedly infringing the Ziebart and Formula Q trademarks in 2000, plaintiff believed defendant stopped using the trademarks that same year, prior to the lawsuit being filed.   Thus, there was no reason for plaintiff to bring its trademark infringement claims in the 2001 litigation.

The counterclaims made in 2001 are not sufficiently related to trademark infringement such that the mutual release bars plaintiff's claims.   In 2001, plaintiff sued defendant for breach of the non-compete and non-solicitation provisions of the Asset Purchase Agreement after defendant allegedly solicited sales from plaintiff's franchisees.   (Dkt. 56-13 at 12.)   Although trademark infringement relates to competition, it does not sufficiently relate to soliciting sales from plaintiff's franchisees so as to qualify as "in connection" with the counterclaims brought in 2001.   Accordingly, defendant's motion for summary judgment on the ground of res judicata is denied.

### iii.   Count IV Is Not Barred by Equitable Estoppel or the Asset Purchase Agreement

Defendant argues Count IV of the complaint is barred by equitable estoppel or the Asset Purchase Agreement.   (Dkt. 56 at 19–

17

21.)  Defendant argues it was misled by plaintiff because plaintiff failed to request defendant remove the meta tags with "Ziebart" from its website in its correspondence with defendant and in the 2012 Settlement Agreement.  (*Id.* at 20.)  Plaintiff contends its claims are not barred because (1) it is unreasonable for defendant to believe plaintiff wanted removed only the improper uses that plaintiff found; (2) the 2012 Settlement Agreement expressly requires defendant to remove references to Ziebart from its website within thirty days; and (3) plaintiff was not negligent and did not make misrepresentations, as its trademark counsel could not have known about the meta tags.  (Dkt. 66 at 20–22.)

In a trademark infringement suit, a defendant asserting equitable estoppel must prove "(1) misleading conduct that leads the defendant to believe that the plaintiff will not bring an infringement suit; (2) reliance on the misleading conduct by the defendant; and, (3) material prejudice suffered by the defendant as a result of the defendant's reliance." *Volkswagen AG v. Dorling Kindersley Pub., Inc.*, 614 F. Supp. 2d 793, 813 (E.D. Mich. 2009).

18

Here, defendant has not demonstrated plaintiff misled it. The 2012 Settlement Agreement requires defendant "remove references to Ziebart, Zeegard and Z-Shield from its website within thirty days of execution of" the agreement. (Dkt. 56-18 at 3.) The agreement does not expressly mention meta tags, but the language of the agreement— defendant must "remove references to Ziebart . . . from its website"— may be construed as reaching both visible and non-visible references, including meta tags in the website's code, to Ziebart. Thus, there remains a question of material fact with respect to the scope of the agreement. Further, defendant has not demonstrated how plaintiff could have discovered or known about the tags before the 2012 Settlement Agreement since the tags appear only in the website's code. And the 2011 correspondence between the parties that led to the settlement cannot be relied on as the "misrepresentation" given that it predates the settlement. Defendant also does not dispute that it never disclosed the meta tags to plaintiff during their 2011 settlement discussions. Thus, defendant has not demonstrated plaintiff should be equitably estopped from raising its meta tag claim.

Additionally, the Asset Purchase Agreement does not establish defendant may use "Ziebart" or "ZBart" in meta tags. The only provision addressing names states defendant may use "ZP Corporation and variants thereof." (Dkt. 56-2 at 41 (Art. 11.5).) And the 2012 Settlement Agreement requires defendant to remove all references to Ziebart from its website, which indicates there remain questions of material fact with respect to whether and how defendant may use the name "Ziebart." Accordingly, defendant is not entitled to summary judgment on Count IV.

### iv.   Defendant Is Not Entitled to Judgment On the Issues Relating to Its Counterclaims

Defendant has asked for judgment on four issues related to the parties' Amended Supply Agreement: (1) the NDA is still in effect; (2) plaintiff's right to cover under the Amended Supply Agreement does not continue "forever"; (3) plaintiff is barred from arguing that its disclosure of defendant's formula to Pure Asphalt Co. destroyed defendant's rights; and (4) that plaintiff is barred from making new disclosures of defendant's formulas. (Dkt. 56 at 29–33.)

Plaintiff argues that defendant is not entitled to judgment on these issues because (1) plaintiff did not disclose the formula for

20

Formula Q to Pure Asphalt Co., and even if plaintiff did, defendant knew of the disclosure by 2001 and took no steps to ensure the secrecy of its trade secret; and (2) defendant is improperly seeking advisory opinions because it has failed to identify how plaintiff has allegedly acted in a way so as to generate an actual case or controversy. (Dkt. 66 at 22–25.)

District courts have "discretion to entertain declaratory judgment actions," but may decline to address claims within their jurisdiction, taking into account "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995). And the "party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 144 (2007) (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)). The Sixth Circuit has articulated five factors a trial court should consider when determining whether to exercise its declaratory judgment jurisdiction:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the

21

> purpose of "procedural fencing" or "to provide an arena for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Assurance Co. of Amer.*, 392 F. App'x at 475 (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

Here, defendant has pleaded plaintiff gave defendant's formula for Formula Q and other confidential and proprietary information to Pure Asphalt Co., and that Pure Asphalt Co. has continued to use this information.  (Dkt. 52 at 15; Dkt. 56 at 29.)  However, defendant's allegations do not suggest that plaintiff will or has made any disclosures since either the late 1990s or early 2000s. (*See* Dkt. 56-24 at 17.)  Thus, exercise of declaratory judgment jurisdiction would be premature as such a declaration would not settle the controversy regarding whether plaintiff has continued to use defendant's information.  By extension, it would be premature for the Court to exercise declaratory judgment jurisdiction over defendant's request that plaintiff be barred from making new disclosures of defendant's trade secrets.

22

Defendant has also requested a judgment stating that plaintiff's right to cover under the Amended Supply Agreement does not extend "forever." Defendant has phrased its claim very broadly, and a judgment reciting this axiomatic statement would do little to resolve the legal rights and relations of the parties. Further, both parties agree that the provisions imposing obligations on the parties related to the purchase and sale of goods are no longer in effect, and defendant has not demonstrated that plaintiff is attempting to cover by purchasing from Pure Asphalt Co. Therefore, there is no case or controversy that a declaratory judgment alone would resolve. Accordingly, defendant is not entitled to a declaratory judgment or summary judgment on this issue.[3]

Finally, defendant asks that plaintiff be barred from arguing any past disclosure of defendant's trade secret relating to Formula Q destroyed defendant's rights to that trade secret. Defendant claims that plaintiff disclosed the formula in 1999, but subsequently agreed

---

[3] As set forth below, plaintiff's right to cover ended on September 17, 2007. This fact alone does not resolve the rights of the parties, but addresses defendant's counterclaims. Thus, the issue standing alone is not appropriate for declaratory relief. But, the issue is relevant to resolving the statute of limitations claims in plaintiff's motion for partial summary judgment and is addressed there.

23

not to disclose any product formulas in the 2001 Amended Supply Agreement, and that this agreement forecloses plaintiff's right to rely on this defense. (Dkt. 66 at 32.) Plaintiff agrees both that the relevant disclosure occurred before the Amended Supply Agreement was finalized, and that the prior disclosure itself did not destroy defendant's trade secret. (Dkt. 66 at 22, 24.)

That plaintiff does not claim the prior disclosure destroyed defendant's trade secret indicates defendant's request for judgment is likely being made "for the purpose of 'procedural fencing'" rather than "to provide an arena for res judicata." *Assurance Co. of Amer.*, 392 F. App'x at 475.

Additionally, defendant's request would not resolve any questions here. First, as set forth below, plaintiff does not claim ownership of any trade secrets, only trademarks. Rather, plaintiff argues that if a trade secret were disclosed, defendant lost its right to bring this because it never took steps to protect its trade secret. A declaratory judgment relating to the disclosure would not preclude plaintiff from making this argument. Trade secrets are no longer protectable if the holder fails to take reasonable steps to ensure the secrecy of the information. *Giasson*

24

*Aerospace Science, Inc. v. RCO Eng'r, Inc.*, 680 F. Supp. 2d 830, 840 (E.D. Mich. 2010) (under Michigan law, the trade secret owner must take actions "reasonable under the circumstances to maintain [the] secrecy or confidentiality"). Questions as to whether an owner has taken reasonable steps to maintain confidentiality "ordinarily is a question of fact for the jury," and "only in an extreme case can what is a 'reasonable' precaution be determined [as a matter of law]." *Id.* at 840 (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003), *cited in Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294 (6th Cir. 2008)). Thus, defendant is not entitled to declaratory or summary judgment barring plaintiff from arguing that its disclosure of the trade secret destroyed defendant's rights in that trade secret.

### B.   *Plaintiff and Counter Defendant's Motion for Partial Summary Judgment*

Plaintiff and counter defendant Pure Asphalt Co. seek summary judgment on Counts I-IV of defendant's five counterclaims. As set forth below, Pure Asphalt Co. is entitled to judgment on the pleadings with respect to Counts III and IV. Because Count III is against only Pure Asphalt Co., this count will not be addressed here. Count IV will be discussed with reference to plaintiff only.

25

### i.   Count I: Breach of Contract

Defendant claims plaintiff breached the Asset Purchase Agreement and NDA by registering the Formula Q trademark and wrongfully disclosing and using the trade secrets relating to Formula Q and "other formulas." (Dkt. 52 at 30–32.) Plaintiff claims Count I is barred by the statute of limitations. (Dkt. 57 at 12–13.)

Under Michigan law, a breach of contract claim must be brought within six years of the time the claim accrues. MICH. COMP. LAWS § 600.5807(8). A breach accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Scherer v. Hellstrom*, 270 Mich. App. 458, 463 (2006) (breach accrued when deadline in contract passed). Thus, the statute of limitations typically begins to run when the breach occurs, or when the "promisor fails to perform." *Blazer Foods, Inc. v. Restaurant Props., Inc.*, 259 Mich. App. 241, 245–46 (2003).

Defendant argues plaintiff breached the Asset Purchase Agreement and NDA by wrongfully disclosing its trade secrets to alternate suppliers after plaintiff lost its right to cover in 2012, and that defendant did not learn of these wrongful disclosures until 2015.

26

Plaintiff argues defendant's breach of contract claim accrued at least ten years ago when the amended supply agreement expired, or even earlier, in 2003, when plaintiff stopped purchasing products from defendant. (Dkt. 57 at 19.)

Defendant has offered no evidence to support the allegation that plaintiff has recently disclosed or continues to disclose defendant's trade secrets or that defendant learned of such alleged conduct only in 2015. At best, defendant offers the declaration of Ellis Breskman, the majority owner of defendant. Mr. Breskman claims he learned from Tom Walker, who worked for plaintiff, that plaintiff disclosed the formula for Formula Q to Pure Asphalt Co. (Dkt. 64-2 at 4–5.) Problematically, Mr. Breskman has not provided the date on which he allegedly heard from Mr. Walker that plaintiff had disclosed defendant's formula to Pure Asphalt Co. Defendant does not contest knowing that plaintiff potentially disclosed the formula to Pure Asphalt Co. by 2001. No evidence, including the allegations in the Breskman Declaration, suggests plaintiff disclosed new information or formulas to Pure Asphalt Co. after 2001.

At most, the evidence shows plaintiff has been using the name "Formula Q." This does not, as defendant appears to argue, indicate plaintiff is asserting ownership over the formula for Formula Q. Neither party appears to dispute the formula for the product sold as Formula Q is Formula 1021. But defendant has offered no evidence to show Formula 1021 is being used by plaintiff in the product currently being sold as Formula Q. Thus, even if plaintiff is using the Formula Q trademark, use of the name is insufficient to imply the continued use or disclosure of Formula 1021, and there is no evidence to show any improper disclosures or use of defendant's trade secrets relating to the product sold as Formula Q past 2001. Consequently, there is no genuine issue of fact indicating a breach of contract occurred at any time. But assuming there was a breach, defendant's claim accrued on September 18, 2007, the day after the Amended Supply Agreement expired.

Defendant's breach of contract claim for improper disclosure is therefore ten years old and is barred by the six-year statute of limitations. Defendant relies on *Kendall Holdings Limited v. Eden Cryogenics LLC*, 521 F. App'x 453 (6th Cir. 2013), to show its claim is

28

not barred, but this reliance is misplaced. That case involved a plaintiff alleging defendant misappropriated its trade secrets under the Ohio Uniform Trade Secrets Act. Defendant Eden Cryogenics argued there was no misappropriation and the claim was barred because plaintiff permitted defendant to retain the drawings allegedly misappropriated. *Id.* at 457. The Sixth Circuit concluded the district court erred in granting summary judgment to defendant because defendant itself introduced evidence of its continued use past when permitted to do so. *Id.* at 458.

These are not the facts here. In this case, plaintiff has not admitted to retaining the formula past 2007, and it has not introduced evidence of continued use of the formula for Formula Q. Thus, that plaintiff disclosed the information in or prior to 2001 does not create a question of fact as there is no evidence of continued use or disclosure after this date. Defendant's conclusory statements do not change this.

Defendant's reliance on plaintiff's response to interrogatory 8 is likewise misplaced.[4] Nothing in plaintiff's response indicates it is asserting a right to use defendant's trade secrets; in fact, plaintiff

---

[4] Interrogatory 8, dated March 14, 2016, is plaintiff's supplemental responses to defendant's first set of requests for admission, interrogatories, and requests for production of documents. (*See* Dkt. 64-3.)

29

denies using the trade secrets. Although plaintiff, in interpreting section 17(b) of the Amended Supply Agreement, states the section does not limit plaintiff's use, nowhere does plaintiff assert a right to use defendant's trade secrets.

Accordingly, the claim with respect to defendant's disclosure and use allegations is time barred and plaintiff's motion for summary judgment as to this claim is granted. However, plaintiff has failed to address the portion of Count I alleging a breach of contract for plaintiff's 2015 registration of the Formula Q trademark. Insofar as plaintiff intended to request summary judgment on this issue, the motion is denied.

### ii.    Count II: Misappropriation of Trade Secrets

Defendant claims plaintiff misappropriated defendant's trade secrets "relating to Formula Q and other formulas" by "disclosing them to third parties and/or using them" despite being aware of its duty not to disclose the information. (Dkt. 52 at 33–34.) Plaintiff argues this counterclaim is time barred.

Defendant has brought its claim pursuant to section 445.1902(b)(ii)(B) of the Michigan Uniform Trade Secret Act (MUTSA),

MICH. COMP. LAWS § 445.1902(b)(ii)(B).  (Dkt. 64 at 15.)  This section

defines misappropriation as follows:

> Disclosure or use of a trade secret of another without express
> or implied consent by a person who . . .
> (B) At the time of disclosure or use, knew or had reason to
> know that his or her knowledge of the trade secret was
> derived from or through a person who had utilized improper
> means to acquire it, acquired under circumstances giving
> rise to a duty to maintain its secrecy or limit its use, or
> derived from or through a person who owed a duty to the
> person to maintain its secrecy or limit its use.

Under this statute, a claim for misappropriation of trade secrets

must be brought within three years "after the misappropriation is

discovered or by the exercise of reasonable diligence should have been

discovered."  MICH. COMP. LAWS § 445.1907.

For the same reasons set forth above with respect to defendant's

breach of contract claim, defendant's misappropriation claim is also

barred.  Moreover, defendant has failed to identify what the "other

formulas" and trade secrets are, and sufficiently demonstrated only that

plaintiff may have legally disclosed information relating to the formula

for Formula Q in or before 2001.  Defendant has therefore failed to raise

questions of material fact that plaintiff misappropriated any trade

secrets, and plaintiff's motion for summary judgment on Count II is granted.

### iii.   Count IV: Declaratory Judgment

Plaintiff seeks summary judgment on the ground that defendant's request for a declaratory judgment is time barred.   (Dkt. 57 at 15.) Count IV requests the court declare "the rights and legal relations of Z Tech, Ziebart and Pure Asphalt pertaining to Z Tech's formulas and other trade secrets and confidential and proprietary information."  (Dkt. 52 at 36.)

As set forth above, plaintiff is not asserting any ownership rights to defendant's trade secrets or formulas.  And as set forth below, Pure Asphalt Co. is also not asserting any ownership rights to these trade secrets or formulas.  Defendant has failed to raise questions of material fact suggesting otherwise.  Rather, the dispute is between plaintiff and defendant regarding ownership of various trademarks.   Accordingly, this issue is not ripe for declaratory relief and plaintiff is entitled to summary judgment on Count IV.

### C.   *Counter Defendant's Motion for Judgment on the Pleadings*

Pure Asphalt Co. argues it is entitled to judgment on the pleadings with respect to defendant's counterclaims III and IV because defendant has failed to state a plausible claim.

### i.   Count III: Trade Secret Misappropriation

Defendant claims Pure Asphalt Co. misappropriated its trade secrets, including Formula Q and "other formulas," pursuant to MICH. COMP. LAWS § 445.1902(b)(ii)(B). (Dkts. 52 at 34, 64 at 15.)

To plead misappropriation of a trade secret, a party must first demonstrate "the information at issue actually constitutes a trade secret." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006). A trade secret is information that derives economic value because it is unknown to others, and is subject to efforts that are reasonable under the circumstances to keep it secret. *Id*. The party claiming a trade secret "must particularize and identify the purportedly misappropriated trade secret with specificity." *Int'l Tech. Consultants, Inc. v. Stewart*, Case No. 07-13391, 2010 WL 3789831, at *11 (E.D. Mich. Sept. 22, 2010).

Here, defendant has not identified by name or description the "other formulas" it claims Pure Asphalt Co. misappropriated.

33

Defendant claims these formulas were purchased through the Asset Purchase Agreement, but the agreement does not identify the formulas and defendant provides no other details.  Thus, taking all of defendant's allegations as true, defendant has failed to state a plausible claim or raise questions of material fact with respect to the "other formulas."

Defendant also claims Pure Asphalt Co. misappropriated trade secrets relating to Formula Q by disclosing or using it.  However, defendant has not provided any information that indicates or even suggests Pure Asphalt Co. has disclosed, is using, or is threatening to use any trade secret relating to Formula Q.  At best, defendant alleges that during this dispute it "learned that . . . Pure Asphalt was using the formula" (Dkt. 52 at 26), and "[o]n information and belief, Pure Asphalt is continuing to use Z Tech's trade secrets."  (*Id.* at 30.)  These allegations are conclusory statements, and defendant provides none of the "information" that led it to learn or believe Pure Asphalt Co. was disclosing or using its trade secrets.  Without more, defendant has failed to state a plausible claim with respect to any trade secrets relating to Formula Q.

Accordingly, Pure Asphalt Co.'s motion for judgment on the pleadings as to Count III is granted.

### ii.    Count IV: Declaratory Judgment

Defendant claims it is entitled to a declaratory judgment establishing "the ownership of and rights to Z Tech's formulas and other trade secrets and confidential and proprietary information." (Dkt. 52 at 36.) Pure Asphalt Co. argues it is entitled to judgment on this claim because it has never owned and is not using defendant's trade secrets. (Dkt. 58 at 21.)

Nowhere in defendant's briefs does it argue Pure Asphalt Co. asserted ownership rights to any of its trade secrets or other confidential or proprietary information. Further, as with Count III, defendant has failed to identify the trade secrets and other information in dispute. Although defendant has identified Formula Q, as set forth above, defendant has failed to raise questions of material fact as to whether Pure Asphalt Co. is currently using or recently used any of the trade secrets related to Formula Q. Thus, there is no case or controversy with respect to ownership of the formula previously used

for Formula Q, and Pure Asphalt Co. is entitled to judgment on the pleadings as to Count IV.

## IV.   Conclusion

For the reasons set forth above, defendant's motion for summary judgment is DENIED.  (Dkt. 55.)  Plaintiff's motion for partial summary judgment is GRANTED IN PART to Counts I (partial—disclosure and use of formula for Formula Q), II, and IV, and DENIED IN PART as to Count I (registration of Formula Q trademark).  (Dkt. 57.)  Counter defendant Pure Asphalt Co.'s motion for judgment on the pleadings as to Counts III and IV of defendant's counterclaims is GRANTED.  (Dkt. 58.)  Because Pure Asphalt Co.'s motion for judgment on the pleadings is granted, its motion for partial summary judgment on Count III is DENIED AS MOOT.  (Dkt. 57.)

IT IS SO ORDERED.

Dated: January 23, 2017              s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

36

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 23, 2017.

<u>s/Felicia M. Moses</u>
FELICIA M. MOSES
Case Manager